**Stefanie Lynne BRUMIT, Plaintiff–Appellee,**

v.

**Walter Jessee BRUMIT, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 14, 1997.

Application for Permission to Appeal Denied by Supreme Court June 30, 1997.

T. Wood Smith, Greeneville, for Defendant–Appellant.

Edward L. Kershaw, Leonard & Kershaw, Greeneville, for Plaintiff–Appellee.

**OPINION**

SUSANO, Judge.

This post-divorce litigation presents issues revolving around the custody of the parties' only child, Emily Constance Brumit (Emily) [1]

---

1. For ease of reference, we will refer to the child by her first name. No disrespect is intended.

(DOB: November 22, 1989). At the time of the parties' divorce in 1993, Stefanie Lynne Brumit (Mother) was awarded sole custody. In the present chapter of this litigation, Walter Jessee Brumit (Father) seeks to change the child's custodial arrangement to that of joint custody. The trial court denied Father's petition; modified the visitation arrangement; and ordered that the child's previously-ordered psychological therapy would take place in Florida rather than in Tennessee. Father appealed, raising issues that present the following questions for our review:

1. Does the evidence preponderate against the trial court's denial of Father's petition for joint custody?

2. Did the trial court modify Father's visitation with the parties' minor child without affording him an opportunity to be heard?

3. Does the evidence preponderate against the trial court's judgment that Father's second visitation period in each month would end at 2:00 p.m. on Sunday instead of 6:00 p.m.?

4. Does the evidence preponderate against the trial court's decision that the child's psychological therapy should take place in Florida rather than in Tennessee?

I

Our standard of review regarding the trial court's factual findings in this non-jury proceeding is *de novo*; however, the case comes to us accompanied by a presumption that those findings are correct—a presumption we must honor unless the evidence preponderates against those findings. Rule 13(d), T.R.A.P. Questions of law come to us free of any such presumption. *Adams v. Dean Roofing Co., Inc.,* 715 S.W.2d 341, 343 (Tenn. App.1986).

■ A trial court's initial award of custody is "subject to such changes or modification as the exigencies of the case may require," T.C.A. § 36–6–101(a)(1); but it is clear

that where a decree has been entered awarding custody of children, that decree is *res judicata* and is conclusive in a subsequent application to change custody unless

some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody.

*Griffin v. Stone,* 834 S.W.2d 300, 301–02 (Tenn.App.1992). *See also Musselman v. Acuff,* 826 S.W.2d 920, 922 (Tenn.App.1991) ("the trial judge must find a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody.")

■ While many proceedings in the law are factually-driven, this is particularly true of custody cases, both on initial awards as well as in cases involving a request to modify a previous award. *Rogero v. Pitt,* 759 S.W.2d 109, 112 (Tenn.1988). In such cases, a trial court has wide discretion, and we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion. *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn.1988). The welfare of the child is always the paramount consideration. *Id.*

II

In November, 1993, Mother remarried, and moved with her new husband and Emily to Jacksonville, Florida. This move prompted the parties to enter into an agreed order changing Father's visitation time with his daughter. After the move, problems developed between the parties regarding Father's visitation rights, and the parties had several hearings below in which they presented their conflicting stories regarding Father's missed opportunities at meaningful in-person and telephonic visitation. It was Father's position that Mother's interference with his visitation could only be remedied by a change to joint custody.

The trial court found that Mother had failed to strictly comply with the court's decrees on Father's visitation rights. He found her in contempt and assessed a punishment of incarceration, which he suspended. He declined to change custody, finding an insufficient predicate for such a change.

III

■ The evidence does not preponderate against the trial court's findings of fact re-

garding the petition for change of custody. The only basis for the change advanced by Father was Mother's alleged interference with his visitation and her denigrating of his role as Emily's father. To the extent the record supports such a finding, that conduct was addressed by the trial court through its contempt power and in other ways. Beyond this conduct, there was no evidence that the circumstances of the parties and their child had changed since the divorce in a way that would require a change in the basic custodial arrangement. Assuming, for the purpose of argument, that Mother had interfered with Father's visitation rights and belittled his parental role, we do not understand how this activity would be logically addressed by a change in legal custody where there was no request for a change in the identity of the residential custodian. In any event, this case is one where "[t]he feelings between the parties [are] such as to demonstrate an absence of the cooperative spirit that is so essential to a workable joint custody arrangement." *Jahn v. Jahn,* 932 S.W.2d 939, 942 (Tenn. App.1996). The distance between the Father's Tennessee residence and Mother's abode in Jacksonville, while not insurmountable, is another factor working against a joint custody arrangement. Father's first issue is found to be without merit.

Father claims in his second issue that the trial court modified his every-other-weekend visitation to permit Mother to pick up Emily in Greeneville at 2 p.m. Sunday instead of the previously-decreed 6 p.m., without affording him an opportunity to be heard on this issue. We cannot accept Father's characterization of what took place in this case.

Prior to the hearing on February 6, 1995, which hearing led to the action that forms the basis of this appeal, Mother was obligated to pick up Emily in Greeneville at 6 p.m. on the Sunday of Father's second period of weekend visitation each month. It is the change in this pick-up time about which Father complains.

· The dual issues of custody and visitation were clearly before the trial court at the February 6, 1995, hearing. It is true that there is no mention in the transcript of the court's opinion orally given at the conclusion of the proof regarding a change in the time Mother was to pick up her daughter in Greeneville; but this matter was addressed by the court in its order of May 9, 1995, which order incorporates the previously-mentioned oral opinion:

> It is Ordered that the former wife shall retrieve the parties' minor child from the state of Tennessee, at the conclusion of the former husband's second visitation period in each month, recommencing in March, 1995. *Former wife may pick up the child in Tennessee at 2:00 p.m. Sunday afternoon.*

(Emphasis added).

Husband contends that this modification was prompted by a letter that Mother allegedly wrote to the court following the hearing. His brief indicates that the letter can be found at "page 215" of the second volume of the record. We have looked at page 215— that happens to be the last page of volume two of the record[2]—and that page is the trial court clerk's certificate and seal.

We have searched the record for the letter referred to by Father. It is nowhere to be found in the record certified to us by the trial court clerk. We cannot consider something that is not in the record.

The record does not support Father's argument that the trial court acted on a matter without affording him an opportunity to be heard on the subject. Without question, the issue of Father's visitation was before the court on February 6, 1995. The second issue raised by Father is also found to be without merit.

■ Father next contends that the trial court erred in changing Mother's pick-up time from 6 p.m. Sunday to 2 p.m. The evidence does not preponderate against the trial court's findings on this issue. Jacksonville is approximately 530 miles from Greeneville. An earlier start time for this long journey is in keeping with Emily's best interest, who has to get up early on Monday morning to go to school. A court can limit visitation, if to do so is in the best interest of

---

2. There are only two volumes in the record of papers filed with the trial court clerk.

the child. *Suttles,* 748 S.W.2d at 429. The third issue is without merit.

Finally, Father finds fault with the trial court's decision to select a therapist in Jacksonville for Emily's psychological counseling. The evidence does not preponderate against this determination. For the most part, Emily is in Florida. It is certainly more convenient for her if the therapy is administered in Jacksonville rather than in Tennessee. There is no error in this part of the court's decree.

The appellee has asked us to consider post-judgment facts. We decline to do so because the matters suggested to us are not the type of facts contemplated by Rule 14, T.R.A.P. Even if we could consider the facts urged by the appellee, we do not find that they compel a different result in this case.

The judgment of the trial court is in all things affirmed. Costs on appeal are taxed against the appellant and his surety. This case is remanded to the trial court for enforcement of its judgment and the collection of costs assessed there, all pursuant to applicable law.

GODDARD, P.J., and FRANKS, J., concur.