IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 18, 2003 Session

## CHRISTOPHER D. DIRR
v.
## LOUISE "LUCY" Y. DIRR (LEDBETTER) M.D.

Direct Appeal from the Chancery Court for Maury County
No. 96-157      Robert L. Jones, Chancellor

No. M2001-03049-COA-R3-CV - Filed October 15, 2003

This case involves a child custody dispute between the parents of two minor children. In the original divorce action, mother was granted an absolute divorce and sole custody of the two children and father was granted supervised visitation. Father has since brought proceedings seeking to modify the custody arrangement and appeals the decision of the Chancery Court of Maury County to this Court. For the reasons hereinafter stated, we affirm the decision of the Chancery Court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Christopher D. Dirr, *pro se*, Nashville, TN

Jerry C. Colley, Mark A. Free, Columbia, TN, for Appellee

### OPINION

### Facts and Procedural History

Louise Ledbetter ("Mother") was awarded an absolute divorce from Christopher Dirr ("Father") in September 1997 on the grounds of inappropriate marital conduct. In addition, the court below found it was in the best interest of the two minor children, Rachael and Robert (collectively the "Children"), that Mother be awarded sole custody while Father only have supervised visitation twice during the week and for alternating weekends. The trial court, the Honorable James Weatherford sitting by designation, found that Father's "puppy dog kissing" or "tongue touching" with Rachael constituted inappropriate conduct, and the evidence of that conduct, along with the entire testimony of those proceedings, warranted supervised visitation.

On November 14, 1997, the court held a hearing on Father's motion to alter or amend the final judgment and denied that motion. The Father petitioned the court to modify the final decree of divorce on April 20, 1999, alleging that his attendance at counseling sessions and Mother's remarriage to a person with a teenage boy constituted a material change in circumstances, such that he should be awarded at least unsupervised visitation. Following this petition, a series of motions for restraining orders and changes in the visitation schedule were filed by the parties. A hearing on the petition was held in August 2000 before the Honorable Robert Jones, and an order was issued that same month finding there had been no material change in circumstances that might warrant a change in the visitation arrangement. Immediately following this order, Father filed a motion to alter or amend the August 2000 order and a hearing was held on October 24, 2000. The lower court, in an order dated January 19, 2001, denied Father's motion to alter or amend the visitation schedule. That order directed Father and Mother to each submit plans to the court which would phase out supervised visitation in an attempt to move towards a forty-eight hour, unsupervised visitation schedule for Father.

The court adopted most of the provisions of Mother's plan drawn up by a qualified social worker, Bonnie Beneke ("Beneke"), in a hearing on March 20, 2001. Father, Mother and the Children were to attend counseling individually with Beneke, and Father stated he would do so with the right frame of mind. In that same hearing, Father was ordered by the trial court to pay $22,000 of Mother's attorney's fees taking into account Father's financial situation and balancing that with the fact that Father has proceeded *pro se* since April 17, 2000. Although Father was ordered to attend sessions for a minimum of three months, Father only attended three sessions holding his last one on April 20, 2001. The sessions ceased because Father presented pictures of him and Rachael "tongue touching," and Beneke stated her opinion that such an act was "sexual" in nature. Father's temper flared and Beneke asked that Father leave her office, which he did. These events were testified to in a hearing on September 5, 2001. In addition, Beneke stated that, while the Children were both well-adjusted, Robert had fears of his Father, Rachael feared that her Father would not return them to their Mother if they were not supervised, and the Children wanted supervision on their visits with their Father.

A final hearing was held on October 23, 2001, and the trial court decided that the parties' rights and obligations with respect to the Children would be governed by the original divorce decree filed September 3, 1997, and the amended and restated order filed January 19, 2001. A final order was filed on November 6, 2001, adjudicating all the issues which had been before the court in the hearings on March 20, July 27, September 5, and October 23, 2001, and that order was amended on November 27, 2001, upon a motion of the Mother. Father filed a timely notice of appeal to this Court on December 7, 2001, raising the following issues for our review[1]:

I.      Whether the trial court erred in requiring continued supervision of the Father's visitation with the Children and not awarding Father custody of the Children;

---

[1]Appellant Father raises five issues in his brief, however, we find that two of those issues, requiring continued supervision and denying Father custody of the Children, are one and the same.

II. Whether the trial court erred in issuing an order for closure for a case open to the press for years;

III. Whether the trial court erred in awarding a portion of legal fees to Appellee Mother rather than awarding legal fees to Appellant Father; and

IV. Whether the trial court Chancellors Jim Hamilton and Robert Jones acted at a minimum with the appearance of impropriety such that reasonable minds would have the perception that the Chancellors, in carrying out their judicial responsibilities, were impaired with respect to the following: integrity, impartiality, or competence.

V.

For the following reasons, we affirm the trial court on these issues.

## Standard of Review

Because this case was tried without a jury, our review of these issues is governed by Tennessee Rule of Appellate Procedure 13(d), which states that a "review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.R.App.P. 13(d). We are mindful that with cases involving custody arrangements, "the details of custody of and visitation with children are peculiarly within the broad discretion of the Trial Judge whose decisions are rarely disturbed." *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973).

## Supervision and Custody

In determining whether or not supervision of visitation is necessary, courts are directed by Tenn. Code Ann. § 36-6-301 (2001). That section states that "[i]f the court finds that the non-custodial parent has physically or emotionally abused the child, the court may require that visitation be supervised or prohibited until such abuse has ceased or until there is no reasonable likelihood that such abuse will recur." Tenn. Code Ann. § 36-6-301 (2001). When considering a decision of the trial court, we are reminded that "[t]he trial court is accorded broad discretion in deciding issues of child custody and visitation, and appellate courts will not interfere with the trial court's decisions absent a showing that the trial court abused its discretion." *Ayers v. Ayers*, 2000 WL 791815, at \*5 (Tenn. Ct. App. 2000) (citing *Whitaker v. Whitaker*, 957 S.W.2d 834, 838 (Tenn. Ct. App. 1997); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997)). In addition, though the statute mentions situations of abuse in ordering supervised visitation, Tennessee courts, refusing to unduly restrict a trial court's discretion, have held previously that this statute does not prevent courts from ordering supervised visitation in the absence of physical or emotional abuse. *Spiegel v. Spiegel*, 1997 Tenn. App. LEXIS 88, at \*7 (Tenn. Ct. App. 1997). Finally, "[i]f the issue before the court is a modification of the court's prior decree pertaining to custody or a residential parenting arrangement, the petitioner must prove by a preponderance of the evidence a material change in circumstance." Tenn. Code Ann. § 36-1-101(a)(2)(B) (2001). If a court finds that there has been a "material change in circumstances," then the court must determine if a change in the custody arrangement is in the child's best interest using the factors enumerated in Tenn. Code Ann. § 36-6-

106 (2001).  *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. Ct. App. 2003); *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998). After our review of the record, we agree with the trial court that there has been no material change in circumstances from the time of the amended and restated order in January 2001 to the time of the final order rendered in November 2001.

While the court below found no evidence of physical or emotional abuse by the Father in its January 2001 order or its November 2001 order, as stated above, a trial court need not find evidence of abuse in order to find that supervised visitation is in the best interest of the child.  *Spiegel*, 1997 Tenn. App. LEXIS 88, at *7.  Though no evidence has been presented showing that Father has "tongue touched" with either of the Children since the divorce hearing in 1997, the court below found, and the evidence does not preponderate against, the fact that "counseling" for Father would be appropriate, and Father refused to meet with Beneke after only three sessions when he was supposed to attend a minimum of six as ordered by the court in the March 2001 hearing.  Instead, he became defensive when Beneke offered her professional opinion about the act of "tongue touching" with Rachael.  And, while the court also found that Mother and Beneke did contribute to the lack of progress towards unsupervised visitation, it found, and the evidence supports, that Father's actions were more substantial than Beneke's and Mother's combined.  Given the testimony about Father's outburst directed at Beneke for offering her opinion to Father about "tongue touching," the testimony that he followed a former babysitter of the Children in his car, and the remainder of the testimony offered in the four hearings in 2001, the evidence does not preponderate against the finding that no material change in circumstances had occurred such that it would be in the best interests of the Children to change the custody arrangement.

### Order for Closure

Next, Appellant Father argues that the trial court erred when it prohibited the media from publishing, or either of the parties from communicating, any testimony about the Children, their identity, or the names of the Mother and Father.  We find we need not address the validity of this argument as Appellant Father lacks standing on this issue.  Generally, a requirement of "standing" is that the party

> must demonstrate a distinct and palpable injury that is likely to be redressed if a requested relief is granted.  At the core of the standing doctrine is the requirement that a plaintiff allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

32A Am. Jur. 2d Federal Courts § 679 (2003) (footnotes omitted).  Appellant Father does not allege an injury as a result of the trial court's order closing the identity of the parties and the Children from media coverage, nor does he allege how this court may redress any injury he could have sustained. Therefore, this Court need not address the merits of the argument against the trial court's order for closure.

**Attorney's Fees**

Next, Appellant Father argues that the trial court erred in awarding Appellee Mother $22,000 in attorney's fees. He argues the trial court erred because he has much fewer resources than Appellee Mother, who is a medical doctor by trade. Tenn. Code Ann. § 36-5-103(c) (2001) addresses the awarding of attorney's fees in child custody cases and states:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, *in the discretion of such court*.

Tenn. Code Ann. § 36-5-103(c) (2001) (emphasis added). In addition, Tennessee courts have found that the ability to pay is not the controlling consideration with regard to awards of attorney's fees in custody or support proceedings. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992); *Bjork v. Bjork*, 1997 Tenn. App. LEXIS 712, at *23 (Tenn. Ct. App. 1997). Ability to pay is still certainly a factor for trial courts to consider, and from the record, it appears the trial court balanced the Appellant Father's ability to pay with the fact that Father, by acting *pro se*, likely caused the proceedings to last much longer than if he were represented by counsel. We find that, given this balancing by the trial court, the court below did not abuse its discretion in awarding Appellee Mother a portion of her legal fees.

**Impartiality, Integrity, and Competency of the Chancellors**

Finally, Appellant Father argues in his brief, though he makes few references to the record, that two Chancellors of Maury County, the Honorable Jim Hamilton and the Honorable Robert Jones, lacked impartiality, integrity, and competence. We find no merit in this argument. Adverse decisions alone are not grounds to find that a trial court judge is guilty of lacking such qualities. Indeed, even though Judge Jones warned Appellant Father, when he decided to proceed *pro se*, that he would be held to the same standards as an attorney, he still granted Father what this Court would consider much latitude during the hearings in the trial court. After an extensive review of the record, we find there is no evidence that either Judge Hamilton or Judge Jones lacked impartiality, integrity, or competency.

**Conclusion**

For the foregoing reasons, we affirm the decision of the Chancery Court. Costs are adjudged against Appellant, Christopher D. Dirr, and his surety, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE