IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 12, 2005

## CAROL LYN ROBERTS v. WILLIAM FREDERICK ROBERTS

**Appeal from the Circuit Court for Sevier County**
**No. 2003-0538-III     Rex Henry Ogle, Judge**

_____

**No. E2005-01175-COA-R3-CV  - FILED OCTOBER 31, 2005**

_____

In this post-divorce proceeding, Carol Lyn Roberts ("Mother") seeks to relocate to North Carolina with the parties' minor child, Victoria Noel Roberts (DOB: June 25, 1997). William Frederick Roberts ("Father") filed a petition in opposition to the move. Following a bench trial, the court determined, under Tenn. Code Ann. § 36-6-108, that the parties were spending "substantially equal intervals of time" with their child and that it was in the child's best interest to remain in Tennessee. Accordingly, the court denied Mother's request to relocate. Mother appeals. For the reasons stated herein, we vacate the trial court's decision and grant Mother's request to relocate with the child.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Bruce Hill, Sevierville, Tennessee, for the appellant, Carol Lyn Roberts.

Dennis C. Campbell, Sevierville, Tennessee, for the appellee, William Frederick Roberts.

**OPINION**

I.

Mother and Father were divorced September 8, 2003, following a 14-year marriage. Under the terms of the parties' permanent parenting plan, Mother was designated as primary residential parent of the child, who was then six years old, and Father was granted reasonable visitation. Father's visitation schedule consisted of alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m.; every spring break; every Father's Day; Father's birthday; and alternating holidays.

According to the testimony, the parties followed this visitation schedule until mid-June, 2004. Beginning in July, 2004, Mother began a temporary undercover assignment with her

employer, the Knox County Sheriff's Department ("KCSD"). Because the assignment required Mother to work nights and weekends, she permitted the child to stay with Father on a more frequent basis than as provided for in the parenting plan. Mother was also motivated by the fact that she felt it would be good for the child to spend more time with Father, as he was planning to remarry in July. Mother believed that the increased visitation would allow the child to get to know her new stepmother, Teresa Roberts ("Stepmother"). Father and Stepmother married on July 23, 2004.

On August 31, 2004, Father filed a petition to modify custody and child support. Mother, whose special assignment with KCSD had ended on September 2, answered Father's petition, denying that a modification of custody was warranted, and filed a counter-complaint for an increase in child support. On December 14, 2004, Mother sought the permission of Father to relocate to Buncombe County, North Carolina, with the child. Mother alleged that she had received a job offer there with increased salary and benefits. In response to this request, Father filed a petition in opposition to the removal of the child. Mother then filed a motion to relocate.

The case proceeded to a bench trial on March 1, 2005, at which trial the court heard the testimony of Mother, Father, Stepmother, and two other witnesses.[1] At the conclusion of the trial, the court made the following findings:

> Here is what the Court must find under the law of the case that I've heard, of the facts that I've heard.
>
> Number one, that the preponderance of the evidence as to the amount of time that has been spent by the nonresidential parent has been substantial in the past months, at least in the past year.
>
> Therefore, the Court must judge the standards of this case under 36-6-108(b) and (c), which says if the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may within 30 days blah, blah, blah.

The court then proceeded to analyze the case under the best interest factors listed in Tenn. Code Ann. § 36-6-108(c). It then concluded as follows:

> The Court thinks that under those factors just cited that the petition to relocate 92 miles is denied. I don't know what gain this is, because she could move 100 miles within the state and accomplish the same thing. . . .

---

[1]The other witnesses' testimony did not have a direct bearing on our rationale for the decision announced in this opinion.

* * *

So on the specific issue before the Court here today, the petition to
relocate is denied.

The trial court memorialized its findings in a final judgment, entered April 20, 2005. From this
judgment, Mother appeals.

## II.

In this non-jury case, our review of the trial court's factual findings is *de novo*; however, the
case comes to us accompanied by a presumption that those findings are correct – a presumption that
we must honor unless the evidence preponderates against the trial court's findings. Tenn R. App.
P. 13(d); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). The trial court's
conclusions of law are not accorded the same deference. *Brumit v. Brumit*, 948 S.W.2d 739, 740
(Tenn. Ct. App. 1997).

## III.

Mother's request to relocate implicates Tenn. Code Ann. § 36-6-108 (2005). That statute
provides, in pertinent part, as follows:

> (a) If a parent who is spending intervals of time with a child desires
> to relocate outside the state or more than one hundred (100) miles
> from the other parent within the state, the relocating parent shall send
> a notice to the other parent . . . .
>
> * * *
>
> (b) Unless the parents can agree on a new visitation schedule, the
> relocating parent shall file a petition seeking to alter visitation. The
> court shall consider all relevant factors, including those factors
> enumerated within subsection (d). The court shall also consider the
> availability of alternative arrangements to foster and continue the
> child's relationship with and access to the other parent. The court
> shall assess the costs of transporting the child for visitation and
> determine whether a deviation from the child support guidelines
> should be considered in light of all factors including, but not limited
> to, additional costs incurred for transporting the child for visitation.
>
> (c) If the parents are actually spending substantially equal intervals of
> time with the child and the relocating parent seeks to more with the
> child, the other parent may, within thirty (30) days of receipt of

notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. . . .

* * *

(d)(1) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(A) The relocation does not have a reasonable purpose;

(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

(2) Specific and serious harm to the child includes, but is not limited to, the following:

(A) If a parent wishes to take a child with a serious medical problem to an area where no adequate treatment is readily available;

(B) If a parent wishes to take a child with specific educational requirements to an area with no acceptable education facilities;

(C) If a parent wishes to relocate and take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;

(D) If the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;

(E) If the custodial parent is emotionally disturbed or dependent such that the custodial parent is not capable of adequately parenting the child in the absence of support systems currently in place in this state, and such support system is not available at the proposed relocation site; or

(F) If the proposed relocation is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, that does not have an adequately functioning legal system or that otherwise presents a substantial risk of specific and serious harm to the child.

(e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors . . . .

IV.

Under Tenn. Code Ann. § 36-6-108, a trial court must, as a threshold determination, decide if the parties are "actually spending substantially equal intervals of time with the child." If that inquiry is answered in the affirmative, then the court must determine, under § 36-6-108(c), if the requested relocation would be in the best interest of the child. If, however, the court finds that the parties are *not* actually spending substantially equal intervals of time with the child, then § 36-6-108(d) permits the primary residential parent to relocate *unless* the other parent can prove to the court that (1) the move has no reasonable purpose; (2) the move poses a threat of specific and serious harm to the child; or (3) the parent's motive for the move is vindictive, as that concept is defined in the statute. Clearly, subsections (c) and (d) of Tenn. Code Ann. § 36-6-108 "are mutually exclusive." A determination of which one applies in a given case depends upon the amount of time the parties are actually spending with the child. **Helton v. Helton**, No. M2002-02792-COA-R3-CV, 2004 WL 63478, at *6 (Tenn. Ct. App. M.S., filed January 13, 2004).

In the instant case, the trial court found that the parties were spending substantially equal intervals of time with the child, and then proceeded to engage in the best interest analysis. Therefore, we must determine whether the evidence preponderates against the trial court's finding with respect to the amount of time the parties were actually spending with the child. If we find that

the trial court applied the wrong subsection of the statute, we must decide whether the record before us is sufficiently developed as to the correct subsection to "provide[] a basis for us to apply the statute and reach a decision on the merits." *Helton*, 2004 WL 63478, at *6 (citing, *inter alia*, *Kendrick v. Shoemake*, 90 S.W.3d 556, 571 (Tenn. 2002)).

In addressing the issue of time actually spent with a child, this court has stated as follows:

> Determining whether parents are spending substantially equal amounts of time with their children is, in the first instance, the trial court's prerogative. While the amount of time the parents are actually spending and the other relevant circumstances are factual matters that will be reviewed using the standard of review in Tenn. R. App. P. 13(d), a determination regarding whether the time actually being spent is "substantial," is an ultimate factual conclusion that is not entitled to the same deference. Thus, the appellate courts must review a trial court's conclusion regarding the substantial equality of parents' residential time without a presumption of correctness. Meaningful appellate review requires us to make an independent decision regarding whether the residential time is substantially equal.
>
> Tenn. Code Ann. § 36-6-108 does not define the term "substantially equal." However, no special definition is required because the common meaning of the words and the phrase are easily understood. The word "substantially" means "essentially," "to all intents and purposes," or "in regard to everything material." 17 OXFORD ENGLISH DICTIONARY 68 (2d ed. 1989). Thus, the plain meaning of the term "substantially equal" connotes a relationship that is very close to equality – so close that it may be considered equal.

*Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *3 (Tenn. Ct. App. M.S., filed April 27, 2004) (capitalization in original). Whenever possible, a court should use a twelve-month period in calculating the amount of time the child has actually spent with each of the parties. *Id.* "Examining the twelve consecutive months immediately preceding the hearing mitigates the skewed statistical results of shorter comparison periods and enables the courts to factor in summer vacations, holidays, and other extended visitation periods that are not evenly distributed throughout the year." *Id.*

The hearing in the instant case was conducted on March 1, 2005. Accordingly, under the *Collins* case, the relevant time period is March 1, 2004, through February 28, 2005. There were only three witnesses who provided any testimony on the subject of time spent with the child: Mother, Stepmother, and Father. Mother testified that, up until the summer of 2004, she and Father followed the parenting plan for visitation. By our calculations, this would mean that Father received the child approximately 17 days from March 1, 2004, through June 18, 2004. Mother admitted that Father

-6-

received additional visitation time during the summer of 2004 due to Mother's work schedule with KCSD. Stepmother kept a detailed diary of the nights the child spent with Father, beginning on June 19, 2004, and going through the month of January, 2005. During this 227 day time period, Father had the child 10 nights in June; 24 nights in July; 16 nights in August; 5 nights in September; 9 nights in October; 10 nights in November; 11 nights in December; and 9 nights in January, for a total of 94 nights. Mother did not dispute any of this testimony. In fact, Stepmother's testimony is consistent with that of Mother: Father received far more than the average visitation during the months of June, July, and August, but beginning in September, the visitation schedule returned to normal. While Stepmother did not testify as to the number of nights the child had spent with Father in the month of February, 2005, our calculations show that the child was with Father 5 nights. Thus, based on the testimony of Mother and Stepmother, Father had the child for a total of 116 nights during the relevant one-year time period, or 32% of the time.

While Stepmother – who testified before Father – indicated in her testimony that Father would have to provide the details of the amount of time the child spent with him prior to June 19, 2004, Father failed to do so. In fact, Father's only testimony about his time with the child was that he had spent "[f]orty-five to 50 percent of the time [with the child] since the divorce, up until we served the [petition to oppose relocation] . . . ." This totally-unsubstantiated assertion, without more, is not enough to contradict the detailed testimony of Mother and Stepmother, and the detailed visitation schedule set forth in the parenting plan. Father and Stepmother both testified about how often they saw the child, mentioning that the child would often stay at Stepmother's place of employment after school. However, this court has previously held that portions of a day cannot be counted as a full day, for purposes of calculating time spent with a child:

> The fallacy with this argument is that if [father] is entitled to claim as full days those days on which he has visitation for part of the time, then [mother] would be similarly entitled to claim the portion during which she has custody as a full day also. Otherwise, [father] would receive credit for an entire day during which he only had the child for a few hours. The result is that the total for both parents would amount to more than 365 days per year. We decline to adopt such a method of calculation.

***Helton***, 2004 WL 63478, at *8; *see also* ***Clark v. Clark***, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *5 (Tenn. Ct. App. M.S., filed December 30, 2003) (declining to consider only the child's "waking hours" in calculating time spent with a parent). Under the statute, the question is not how often a parent "sees" a child, but rather the number of *days* a child is in the custody of a parent.

On the basis of the testimony of the three critical witnesses, the trial court determined that "the preponderance of the evidence as to the amount of time that has been spent by the nonresidential parent has been substantial in the past months, at least in the past year." The standard under § 36-6-108 is not whether the time spent with the child is *substantial*, but whether the time spent is *substantially equal*. We previously noted, quoting from the ***Collins*** opinion, that "substantially

equal" is indicative of a relationship that is "so close that it may be considered equal." ***Collins***, 2004 WL 904097, at *3. While there is no question that the time Father spent with the child during the summer months of 2004 was substantial, his time spent with the child during the year preceding March 1, 2005, was not substantially *equal*. "Although the trial court found that the father enjoyed more than the standard visitation, that finding does not equate to a determination of substantially equal time." ***Helton***, 2004 WL 63478, at *7 n.3. Because Father failed to present any concrete testimony as to the amount of time he spent with the child, we have no choice but to utilize the data provided by Mother, Stepmother, and the parenting plan, which certainly gives no indication that Father was spending anywhere close to 50% of the time with the child. Certainly, a 32%–68% split cannot be considered substantially equal. Accordingly, we hold that the evidence preponderates against the trial court's conclusion that the parties were spending substantially equal intervals of time with the child.

Because we have determined that the trial court came to the incorrect conclusion as to the substantial equality of time spent with the child, resulting in the court engaging in the best interest analysis under § 36-6-108(c), we must now determine whether the record before us contains enough evidence for us to apply the correct statutory provision, *i.e.*, § 36-6-108(d), and "reach a decision on the merits." ***Helton***, 2004 WL 63478, at *6. We find that there is sufficient evidence in the record for us to reach a decision on the merits, and we therefore will proceed to analyze the case under the rubric of § 36-6-108(d).

Having found that the parties were not spending substantially equal intervals of time with the child, Mother will be permitted to relocate *unless* Father has proven one of the following: (1) that the move has no reasonable purpose; (2) that the move would pose a threat of specific and serious harm to the child; or (3) that Mother's motive for the move is vindictive in that it is intended to defeat or deter Father's visitation rights. Tenn. Code Ann. § 36-6-108(d)(1).

With respect to the reasonable purpose for the move, Mother testified that she was earning $25,591.80 per year in her job with KCSD. In November, 2004, Mother was contacted by Major Stafford of the Buncombe County Sheriff's Department and manager of the Buncombe County Detention Facility, where Mother had been employed for seven years before moving to Tennessee. Major Stafford offered Mother a position with the Detention Facility, pursuant to which Mother would develop a housing plan for a new addition to the facility. Mother testified – and provided accompanying documentation – that her salary in her new position would be $30,835.85 per year, which amounts to a 20% increase. In addition, after six months, Mother's salary would increase another 3% to $31,789.54. The new position would also provide Mother with a pension – something she does not have with KCSD – and Mother testified that she already has seven years vested in the Buncombe County retirement program.

This court has consistently held that an increase in salary or an opportunity for career advancement can be a factual predicate to constitute a reasonable purpose for relocation. *See **Price v. Bright***, No. E2003-02738-COA-R3-CV, 2005 WL 166955, at *11 (Tenn. Ct. App. E.S., filed January 26, 2005); ***Collins***, 2004 WL 904097, at *4; ***Butler v. Butler***, No. M2002-00347-COA-R3-

CV, 2003 WL 367241, at *2 (Tenn. Ct. App. M.S., filed February 20, 2003); ***Elder v. Elder***, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. M.S., filed September 14, 2001); ***Leach v. Leach***, No. W2000-00935-COA-R3-CV, 2001 WL 720635, at *4 (Tenn. Ct. App. W.S., filed June 25, 2001); ***Connell v. Connell***, No. 03A01-9808-CV-00282, 2000 WL 122204, at *4 (Tenn. Ct. App. E.S., filed January 25, 2000). Mother's proposed move unquestionably has a reasonable purpose.

With regard to the second ground, there is an utter dearth of evidence that the proposed relocation would pose a threat of specific and serious harm to the child. There is no indication that the child possesses a serious medical condition for which adequate treatment would not be readily available in Buncombe County. *See* § 36-6-108(d)(2)(A). The child has no specific or special education requirements, and Mother provided testimony that the school system in Buncombe County was equal to, if not better than, the school system in Sevier County where the child currently attends; this testimony was not refuted by Father. *See* § 36-6-108(d)(2)(B). There is absolutely no indication that Mother plans to take up residence with anyone unsuitable for the child. *See* § 36-6-108(d)(2)(C). There is no indication that the relocation would result in severe emotional detriment to the child. § 36-6-108(d)(2)(D). There is no testimony that Mother would not be able to adequately parent the child, *see* § 36-6-108(d)(2)(E). The proposed relocation is not to a foreign country. *See* § 36-6-108(d)(2)(F).

While Father and Stepmother testified as to the strong ties the child has to her friends and school in Tennessee, indicating that the move out-of-state would be difficult for her, our Supreme Court has held that

> [a] move in any child's life, whether he or she is raised in the context of a one or two parent home, carries with it the potential of disruption; such common phenomena – both the fact of moving and the accompanying distress – cannot constitute a basis for the drastic measure of a change of custody.

***Aaby v. Strange***, 924 S.W.2d 623, 630 (Tenn. 1996). While the child will be leaving some family and friends behind in Tennessee, she will benefit from the close proximity to additional family and friends in North Carolina: the child's maternal grandmother and paternal grandparents, Mother's brother, Father's sister, the child's cousins, and the child's best friend. Certainly, there is nothing in this record that remotely touches on the relocation posing a threat of specific and serious harm to the child.

Finally, we find that there is absolutely no indication that Mother's motive for moving is vindictive, *i.e.*, that it is intended to defeat or deter Father's visitation rights. The preponderance of the evidence in this case is that Mother's motive for relocating to Buncombe County is the opportunity to pursue a better-paying job with better benefits. There is nothing to indicate that Mother wants to hinder Father's visitation rights. On the contrary, the record is replete with evidence that Mother has always been generous with visitation. Mother allowed Father to take the

child whenever he requested, especially for special occasions. This court finds particularly significant the fact that Mother allowed the child to accompany Father and Stepmother on a week-long vacation to Walt Disney World just two months after Father filed his petition for a modification of custody. Moreover, Mother testified at trial that she would be willing to meet Father halfway between Asheville and Sevierville for visitation, which would be approximately a 45-minute drive for each party, and she stated that she would "certainly be willing to grant [Father] more time to compensate" for the long drive. The evidence clearly preponderates against a finding that Mother intended to defeat or deter Father's visitation rights.

Having determined that Father failed to prove any of the § 36-6-108(d)(1) grounds, we hold that Mother is permitted to relocate to Buncombe County with the child, and we remand this case to the trial court to craft an appropriate visitation schedule in light of Mother's relocation.

V.

The judgment of the trial court is vacated and Mother's request to relocate with the child is granted. This case is remanded to the trial court for proceedings consistent with this opinion and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee, William Frederick Roberts.

 

 

 

 

                                    _____
                                    CHARLES D. SUSANO, JR., JUDGE