# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs November 14, 2005

## THOMAS DAVID CALDWELL v. DAVINA KAY DUKE CALDWELL

**Appeal from the Circuit Court for Bradley County**
**No. V-03-855     John B. Hagler, Judge**

---

### No. E2005-00139-COA-R3-CV  - FILED JANUARY 31, 2006

---

Thomas David Caldwell ("Father") filed a complaint for divorce from his wife of ten years, Davina Kay Duke Caldwell ("Mother"). The trial court, *inter alia*, awarded the parties a divorce, named Mother primary residential parent of the parties' minor child, and divided the parties' marital property. Father appeals both the custody determination and the division of marital property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Barrett T. Painter, Cleveland, Tennessee, for the appellant, Thomas David Caldwell.

Ashley L. Ownby, Cleveland, Tennessee, for the appellee, Davina Kay Duke Caldwell.

### OPINION

### I.

Mother and Father were married on June 11, 1993. One child was born to their union, Emily Lauren Caldwell (DOB: October 25, 1994). At the time of the parties' marriage, Father was not employed and had previously filed for bankruptcy. Mother was working for a Red Food grocery store, which later became Bi-Lo. Before the birth of their child, the parties borrowed $3,000 and opened a consignment store, which was owned in Mother's name because of Father's prior bankruptcy. While both parties participated in the day-to-day operations of the store, Father was in charge of the store during regular business hours. Mother worked at the store after finishing her work day at Bi-Lo. Father would generally keep the child with him at the store while Mother was working at Bi-Lo. By 2000, Mother was in management training with Bi-Lo. She later became a store manager.

The parties' consignment store did not fare well, apparently due, at least in part, to Father's failure to pay sales tax. Following an audit and the state's assessment of Mother's liability for back taxes and penalties, Mother filed for bankruptcy, and the business was sold in 2000 or 2001 for $2,000. The bankruptcy caused the parties to lose not only their business but also their home.

On September 19, 2003, Father filed a complaint for divorce. In addition to the divorce, Father sought, *inter alia*, primary custody of the child and an equitable division of the marital property and debts. Mother answered Father's complaint and filed a counterclaim for divorce.

The trial court heard the case on November 17, 2004. At the conclusion of the trial, the court announced its ruling from the bench, granting the divorce to the parties, but noting that "the main reason for the breakup of this marriage is [Father's] financial misfortunes and his financial irresponsibility." The trial court divided the parties' marital property and debts, and ordered Father to pay the outstanding tax lien, finding that the lien was completely the fault of Father. With respect to custody of the child, the court found that Mother was the more suitable parent to be awarded the status of primary residential custodian, finding that "[s]he has shown more stability; she has been steadier." Father was awarded overnight visitation with the child every other weekend, in addition to one overnight visit per week during the middle of the week. He was ordered to pay child support to Mother.

The trial court entered its final judgment on December 21, 2004, incorporating its memorandum opinion from the hearing, as well as the permanent parenting plan. From this judgment, Father appeals.

II.

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

III.

A.

Father essentially raises two issues for our determination, which we think can be succinctly stated as follows:

> (1) Did the trial court abuse its discretion in naming Mother as the primary residential parent of the child?

> (2) Does the evidence preponderate against the trial court's division of marital property?

We will address each issue in turn.

B.

A trial court has broad discretion regarding a custody determination. ***Brumit v. Brumit***, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997); ***Varley v. Varley***, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996); ***Marmino v. Marmino***, 238 S.W.2d 105, 107 (Tenn. Ct. App. 1950). We will not disturb such a determination unless the record reflects an "erroneous exercise of that discretion." ***Mimms v. Mimms***, 780 S.W.2d 739, 744-45 (Tenn. Ct. App. 1989). "Absent some compelling reason otherwise, considerable weight must be given to the judgment of a trial court in a divorce proceeding in respect to the credibility of the parties and their suitability as custodians." ***Id.*** at 744.

There are "[n]o hard and fast rules . . . for determining which custody and visitation arrangement will best serve a child's needs." ***Gaskill v. Gaskill***, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). A custody determination is "factually driven" and "requires the courts to carefully weigh numerous considerations." ***Id.*** The overriding consideration is the best interest of the child. ***Id.***

The factors a trial court is to consider when determining the custody of children are set forth in Tenn. Code Ann. § 36-6-106 (2005) which provides, in pertinent part, as follows:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;

-3-

* * *

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

In the instant case, the trial court, in reaching its custody decision, made the following findings:

With respect to the parenting plan, I recognize that both parents have played an important role in the life of the child. . . . I thought one of the important things said in court was that she cried in the first grade because she missed both parents. . . . and I think she needs both parents very much.

I was more impressed with the testimony of [Mother] with respect to honesty and what I consider to be credible answers to the questions asked. She really didn't mince words about things. But one of the things that bothered me somewhat, and that is both parents must be very careful not to run the other down in the eyes of the child, and both should encourage the child to want to be with the other parent. Because it's very obvious to me that [Father] has played a very important role in the life of the child, and that needs to be encouraged.

* * *

*A shared parenting arrangement is completely out of the question. That only works when the parties actually agree to do that.* I commend [Mother] for agreeing to that arrangement during the time while the divorce was pending. Most parents who had the anger that – she didn't really express it, but she said she had anger – would not have agreed to that kind of arrangement. And I think that that shows that she is recognizing the importance of [Father] in the life of the child and that she's thinking about the child.

*But that arrangement just cannot work. That can only work if the parties are in agreement. The parties are not in agreement and the Court is not at all inclined to do that, and has never done that when the parties are not in agreement on the parenting plan. And I've also approved many of those plans that I have great questions about.*

-4-

I really have to decide which of the two parents is the more fit to be the residential parent – that's the requirement I have under the law – and I think that that would be [Mother]. She has shown more stability; she has been steadier. To the extent that she has not been as involved in the life of the child, it's simply because she was out there making ends meet. But I think she will bring the stability that the child needs. I do think that [Father] should have the child one overnight per week during the middle of the week so there won't be too much of a break [between visits with Father].

(Emphasis added).

Father argues that it was an abuse of the trial court's discretion for it to state that, when the parties are not in agreement, it had never ordered shared parenting and that, in keeping with that tradition, it would not do so in this case. In addition, Father contends that the trial court improperly expressed a preference against equal parenting time. He effectively argues that the trial court's statements can be interpreted to mean that the court would never order shared parenting time absent an agreement of the parties.

We believe that Father has misconstrued the statements by the trial court. At no point did the trial court state that it would never, under any circumstances, consider shared parenting time without an agreement. Instead, the trial court merely stated that it was not inclined to order shared parenting time in the instant case, and that it had, up to that point, never done so without an agreement of the parties. The trial court then proceeded to analyze the case based on the best interest factors.

While we do not believe the facts of this case support Father's position and the premise underlying it, we are inclined to believe that a general policy of not considering shared parenting in the absence of an agreement is, as a broad policy, not consistent with the law of this state. However, as previously noted, the trial court ultimately made its decision in this case on the facts before it. Therefore, we will proceed to consider the issue of the best interest of the child under the rubric of Tenn. Code Ann. § 36-6-106.

In determining which parent should be named primary residential parent of the child, consistent with the child's best interest, the trial court stated that "both parents have played an important role in the life of the child" and that the child "needs both parents very much." *See* Tenn. Code Ann. § 36-6-106(a)(1). The trial court admonished both parents to "be very careful not to run the other down in the eyes of the child, and both should encourage the child to want to be with the other parent." *See* Tenn. Code Ann. § 36-6-106(a)(10). While the court's findings did not address many of the other statutory factors, the court noted that it was impressed with Mother's honest and credible testimony, and, most importantly, the fact that Mother had "shown more stability" and "has been steadier." *See* Tenn. Code Ann. § 36-6-106(a)(2)-(4).

We find no abuse of discretion in the trial court's decision to name Mother as primary residential parent of the child and we hold that the evidence does not preponderate against the trial court's award of custody of the child to her. Further, we find it notable that the trial court, in an effort to foster the relationship between Father and the child, awarded Father an additional overnight visit each week, which is more than the standard visitation schedule. Thus, we decline to disturb the lower court's custody determination.

C.

Father also asserts that the trial court erred in its division of martial property and marital debts. Specifically, Father takes issue with the fact that the trial court failed to recognize Father's homemaker status, pursuant to Tenn. Code Ann. § 36-4-121(c)(5) (2005).

Property is to be equitably divided and distributed between the parties once it is properly classified as marital. *See* Tenn. Code Ann. § 36-4-121(a)(1) (2005). "Trial courts have wide latitude in fashioning an equitable division of marital property." **Brown v. Brown**, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). Such a division is to be effected upon consideration of the statutory factors found in Tenn. Code Ann. § 36-4-121(c) (2005).

"[A]n equitable property division is not *necessarily* an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." **Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (emphasis added). Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. **Brown**, 913 S.W.2d at 168.

Tennessee Code Annotated § 36-4-121 (2005) provides, in pertinent part, as follows:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

* * *

(8) The economic circumstances of each party at the time the division of property is to become effective;

* * *

(11) Such other factors as are necessary to consider the equities between the parties.

Father acknowledges that the trial court "correctly applied the statutory factors as set [forth] in [Tenn. Code Ann.] § 36-4-121(c) in determining the equitable distribution of the parties' marital property and debts." However, Father believes it was error for the trial court to deny him the status of homemaker and to instead award such status to Mother. In making this finding, the trial court stated as follows:

I've been especially influenced by factor number 5, which is the contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital property, including the contribution of a party to the marriage as homemaker, wage earner or parent. But the contribution of a party as homemaker or wage earner could be given the same weight if each party has fulfilled its role.

Again, I simply have to say that [Mother] has certainly contributed to the appreciation of property and [Father], unfortunately, has contributed to the depreciation of marital property and actually some significant dissipation with respect to the tax lien.

I cannot give [Father] the weight of homemaker in this case, which is a very important consideration. Although [Father] did a lot at home with the child in taking care of the child – and I don't want to take anything away from him, but it still needs to be said that there's a very big difference between being a homemaker and a stay-at-home parent. And [Father] was more of a stay-at-home parent than a

-7-

homemaker.  I think [Mother] was both the wage earner and the homemaker in this case.

After a thorough review of the record, we find no error in the trial court's treatment of Mother as both homemaker and wage earner.  The trial court acknowledged Father's work in taking care of the child, and it pointed out the difference between being a homemaker and being a stay-at-home parent.  In arguing that he should have been awarded homemaker status, Father points out that he was the primary caregiver for the child while Mother worked; that he transported the child to and from school; that he assisted the child with her homework as needed; and that he was involved with the child's extracurricular activities.  We cannot say that these examples further his argument that he should have been named homemaker; rather, they serve to further solidify the trial court's point that Father was "more of a stay-at-home parent than a homemaker."

As a part of this argument, Father contends that the trial court erred in refusing to award him any portion of Mother's 401(k), which amounted to over $94,000 at the time of trial.  Father asserts that he contributed to the appreciation of this asset through his "contributions as homemaker, wage earner and parent."  The trial court, however, determined that Mother's 401(k) was separate property and that Father did not contribute to its appreciation.  We hold that the evidence does not preponderate against the trial court's factual determinations underpinning its division of marital property.

V.

The judgment of the trial court is affirmed.  This case is remanded to the trial court for the enforcement of the trial court's judgment and for the collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed to the appellant, Thomas David Caldwell.

_____
CHARLES D. SUSANO, JR., JUDGE