IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, April 2, 2007

JOHN ANTHONY MELTON v. JENNIFER SHANNON PROFITT
(MELTON) JOHNSON

Direct Appeal from the Chancery Court for Humphreys County
No. 05-079    Hon. Leonard M. Martin, Chancellor

No. M2006-01412-COA-R3-CV - Filed on May 3, 2007

At the time the parties were divorced, they essentially agreed to a joint custodial arrangement for their two children. Subsequently, the father filed a Petition alleging change of circumstances and for primary custody of the children. The wife filed a Counter-petition for primary custody. The Trial Court heard evidence and awarded primary custody to the father. The mother has appealed. We affirm.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Janet S. Kelley, Dickson, Tennessee, for Appellant.

Dan R. Bradley, Waverly, Tennessee, for appellee.

OPINION

In this post-divorce action, the father is seeking custody of the parties' two children. The Divorce Decree was entered on August 31, 2005, and the MDA provided that the parties children, Alanna (d.o.b. 5/6/95) and Garrett (d.o.b. 4/6/00), would reside one week with the mother and one week with the father, and that the parties would have joint decision-making power, and neither would pay child support to the other. Further, that neither party would have a member of the opposite sex in their home when the children were there.

The father's Petition was filed on April 21, 2006, averring that the mother had moved in with her boyfriend in violation of the Decree, and had also moved the children away from the marital residence such that they were having to be transported two hours per day to school, and asked the Court that the father be named as primary caregiver, and be awarded support.

The mother filed an Answer and Counter-Petition, asserting that she and her boyfriend had married, and denied being a poor housekeeper. She admitted there had been a material change in circumstances, but denied that the father should be named primary residential parent. In her Counter-Petition, she asserted that she should be named primary residential parent, and that the father should pay child support. Both parents filed a proposed Parenting Plan in support of their Petitions. A hearing was held on May 11, 2006, and the mother's counsel began by saying they were there on a "temporary basis", and the judge interrupted and stated that he thought they were there seeking to modify the parenting plan. The father's counsel responded affirmatively, and the mother's counsel stated that they came in for a temporary hearing on May 3, and it was reset. The Court stated he thought when they reset it, they agreed to go ahead and hear the petitions to modify on the new day, and it was reset so the mother would have proper notice. The mother's counsel reiterated that she thought they were there on the temporary basis. The mother's counsel stated that they had counter-petitioned for a modification of the parenting plan, and the Court asked whether they were prepared "to hear all of this this morning" and she replied they were. The Court then asked why she was calling it temporary, and the mother's counsel replied, "we discussed right before the hearing that this was on a temporary basis. So that was my understanding. But if it's going to be for a permanent change, that's fine too."

The parties proceeded to present their evidence. After the trial was concluded, the Trial Court stated that he had viewed the photos (photos offered in evidence of the condition of the marital residence the day following the date the mother moved out) and did not find them alarming and not as bad as others he had seen, but he did have a problem with the mother allowing an animal to use the bathroom all over the house. The Judge also referred to the photo showing bugs on the floor, and stated one should take whatever measures necessary to prevent bugs from getting into the house.

The Court found both parents loved the children, but that he thought the children would be better off with the father. He stated that he had concerns about the children's future, and thought the parties should consult with the children's teachers regarding decisions to be made about school, etc. The Judge stated that he was also concerned about the children being home alone for a period of time during the summer, until the mother got home from work, and that it would be better for the children to be with the father because the father's mother would be there for them when the father was at work, as the father lived with his mother.

The Court then entered an Order designating the father as primary caregiver, and set visitation rights and child support in an attached Parenting Plan. The mother was ordered to pay $123.47 per week in child support in the Decree.

On appeal, the mother presents these issues:

1.      Whether the mother's due process rights were violated because the Court made "a temporary hearing a final hearing"?

2.      Whether the Trial Court erred in designating the father as primary residential parent?

3.      Whether the Trial Court erred in modifying the parenting plan?

The mother argues the Trial Court erred in having a final hearing when they were supposed to be having a temporary hearing, and that the mother was deprived of her Constitutional rights to a final hearing after adequate discovery and full and complete trial preparation. As the transcript demonstrates, however, the Court questioned both counsel about the nature of the hearing, and after some lengthy discussion, asked the mother's counsel if she was ready to proceed on the Petition and Counter-Petition, and she replied she was. The Court then asked why she was calling the hearing temporary, and her reply, as quoted above was "we discussed right before the hearing that this was on a temporary basis. So that was my understanding. But if it's going to be for a permanent change, that's fine too."

The mother's counsel had the opportunity to advise the Court that she was not ready, for a full and complete trial, but she affirmed twice that they were ready to proceed on the merits of the Petition and Counter-Petition, and then proceeded with the hearing. The issue is without merit,

Next, the mother argues the father should not have been named primary residential parent, however she admits that there has been a material change in circumstance, which rendered the initial plan unworkable. She agrees that the parenting plans are to be modified as provided in Tenn. Code Ann. §36-6-404(b), which states:

> Any permanent parenting plan shall include a residential schedule as defined in §36-6-402(3). The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall be consistent with this part. If the limitations of § 36-6-406[1] are not dispositive of the child's residential schedule, the court shall consider the following factors:
>
> (1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

---

[1] This statutory section deals with restrictions based on abuse, neglect, etc.

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Similarly, when considering a change of custody and what is in the children's best interests, the trial court is to consider the following factors:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. §36-6-106(a).

Regarding the above factors, the Trial Court found that both parents loved the

children, but the father was better able to provide a stable environment for them, and one that would better prepare them for the future. The evidence established that the father had taken greater responsibility for performing parenting responsibilities relating to the daily needs of the children, and was equipped to provide for their needs. The father was as much a primary caregiver to the children as the mother, and offered evidence of better character and emotional fitness as it related to his ability to parent and provide for the children. By rendering the father the primary caregiver and living with the father, the children would continue in their same community and school, and continue their good relationship with their grandmother, who had cared for them for a large part of their lives. The son's teacher testified that the son had struggled in kindergarten, and switching schools would exacerbate his struggles. Both parents had somewhat difficult job schedules, but the father had a better plan for child care when he was at work (his mother) rather than mother's plan of leaving the children home alone for a short period of time each day. The son's teacher also testified that the son performed better at school and was more prepared on the weeks when he was with his father.

Considering all of the evidence that was presented, the proof preponderates in favor of the Trial Court's decision. Tenn. R. App. P. 13(d). Moreover, the trial court has wide discretion in custody matters, and the trial court's decision will not be reversed unless there is an abuse of discretion. *Brumit v. Brumit*, 948 S.W.2d 739 (Tenn. Ct. App. 1997).

Finally, the mother argues the Trial Court did not make adequate findings of fact, but a review of the transcript demonstrates that findings were made which, although they were not extensive, were sufficient to allow review. The evidence presented at the hearing was also not extensive, but supports the findings and conclusions reached by the Trial Court.

We affirm the primary residential custodian designation and visitation schedule, as modified by the Trial Judge. The Trial Court's Judgment is affirmed and the cause remanded, with the cost of the appeal assessed to Jennifer Shannon Profitt (Melton) Johnson.

_____
HERSCHEL PICKENS FRANKS, P.J.