IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 12, 2015


## WENDI NATASHA COOK v. BRYAN DAVID COOK

**Appeal from the Chancery Court for Putnam County**
**No. 2009361    Ronald Thurman, Chancellor**

_____

**No. M2015-00253-COA-R3-CV – Filed December 9, 2015**
_____


In this post-divorce dispute, Father asserts the trial court erred in failing to find a material change in circumstances warranting a change in the residential schedule. We have reviewed the evidence and find that the significant change in Father's work schedule, the parties' admitted failure to adhere strictly to the parenting plan, and Father's remarriage, when taken together, constitute a material change affecting the child's best interest. Therefore, we reverse the trial court and remand the case for a determination of whether a modification of the residential schedule is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, and ARNOLD B. GOLDIN, JJ., joined.

Cynthia Lyons and William F. Roberson, Jr., Cookeville, Tennessee, for the appellant, Bryan David Cook.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellee, Wendi Natasha (Cook) Keeton.


### OPINION

FACTUAL AND PROCEDURAL HISTORY

Bryan David Cook ("Father") and Wendi Natasha (Cook) Keeton ("Mother") were divorced by final decree entered July 23, 2010. One son was born of the marriage. The

final decree of divorce incorporated an agreed parenting plan naming Mother the child's primary residential parent with approximately 264 days of residential parenting time and with Father exercising approximately 96 days of parenting time.[1] The residential schedule provided parenting time for Father every other week from Friday at 6:00 p.m. to Sunday at 6:00 p.m. and one night each week from 6:00 p.m. until 6:00 a.m. the next morning. Holiday parenting time was shared between the parties and alternated between odd and even years.

On May 13, 2014, Father filed a Petition to Modify Support Obligations and Parenting Plan. Father alleged that a material change of circumstances had occurred warranting a change in his child support and parenting time[2]—namely, his work schedule changed significantly, both parties remarried, and the child had begun school since the entry of the previous plan. Father proposed a permanent parenting plan in which the parties shared equal parenting time with the child. Mother filed an answer on June 30, 2014 denying that a material change in circumstances existed justifying modification of the plan. On December 3, 2014, Father filed a motion requesting the court to allow the child to testify regarding his visitation preferences. The court denied Father's motion on December 15, 2014.

The trial court held a hearing on December 18, 2014. The court heard testimony from Father; Barbie Cook, Father's wife; and Mother. Father testified that, at the time the parties entered into the agreed parenting plan, the child was five years old, and Father was working for the sheriff's department on a twelve-hour work schedule. He explained that his schedule required him to work from 6:00 p.m. until 6:00 a.m. on two or three consecutive days, and then he would be off for two consecutive days. Father testified that the child had indicated on multiple occasions that he desired to spend more time with Father. Father emphasized that he enjoyed doing devotionals with the child before bedtime and would like to have more opportunities to engage in bedtime devotionals. Father stated that, once the child started kindergarten, Mother allowed Father to pick the child up from school occasionally in the afternoons and spend time with the child. Father

---

[1] We are using an approximate number of days of parenting time because the parenting plan incorporated in the final decree states: "Under the schedule set forth below, each parent will spend the following number of days with the children: Mother 22 days Father 8 days." We presume the plan intended for Mother to have twenty-two days per month with the child and for Father to spend eight days per month with the child, depending on the number of days in the month at issue.

[2] In his request for relief, Father prayed for "a new residential sharing schedule to be established consistent with the best interest of the child including but not limiting the potential change in primary residential parent." However, in the attached proposed parenting plan, Father requested the primary residential parent to be "Joint." Father's appellate brief does not argue for a change in the primary residential parent designation; therefore, we only address the residential schedule.

testified that Mother now denied him the opportunity to pick up the child in the afternoons, and instead she required the child to ride "Noah's Ark Bus" to an aftercare program. Father stated that he had remarried, and he now had a daughter with his new wife. Father testified that the child and his two-year-old daughter had a "precious" bond with each other.

Much of Father's testimony focused on a recent change in his employment at the sheriff's department. He stated that he now worked as a criminal investigator and made $46,500 per year. His new position allowed him to work a more traditional schedule—Monday through Friday from 8:00 a.m. until 4:00 p.m. He testified that he was on call for one week every six weeks. On cross-examination, Father agreed that Mother has been the primary caregiver of the child and provided a stable and satisfactory home environment for him. Father admitted to missing a Christmas holiday with the child on the year that Father's step-mother passed away, and he admitted that he missed an Easter with the child due to a work conflict.

Barbie Cook, Father's wife and the child's step-mother, testified next. Ms. Cook stated that she worked in a child development lab and as a substitute teacher. She stated that she occasionally substitute taught at the child's school. She explained that she had a good bond with the child and related well to him. Ms. Cook testified that the child has expressed an interest in spending more time with Father. She testified that she helped the child pick out gifts for Mother for Mother's Day and for her birthday, but that Mother requested that this effort be discontinued. She emphasized that the only full day Father had with the child was every other Saturday, and that it was difficult to accomplish everything they would like to do with the child on that day.

Next, Mother testified. Mother was the practice manager at Volunteer Medical Group and made $80,000 per year. Mother stated that Father was "a good father" but that he did not "discipline consistently" with the child and was not as focused on the child's education as Mother believed was necessary. Mother gave an example of picking the child up from Father's home at 6:00 a.m. before school one morning and finding that the child's "homework was not even correct." Mother stated that she "had to correct his homework so that he could turn it in and do well." Mother testified that the child thrives on a consistent routine. She explained that, when she allowed Father to pick the child up from school, Father had to back out at the last minute on a few occasions due to work conflicts. Mother stated that the child needed more consistency in his after school routine, so she put a system in place whereby the child always knew what to expect. Mother stated, "we have deviated from the parenting plan several times" for holiday visitation schedules and for other reasons. She stated that she deviated from the plan because "it's in Carter's best interest to spend time with both parents." Mother conceded that the child had "expressed an interest to spend more time with his dad, such as, you

3

know, like, he has told me consistently, Mom, I want to see my dad, but I don't want to [be away from you]." Mother stated that the child excelled in school and sports.

The trial court entered an order on January 7, 2015, finding that Father failed to show a material change in circumstances affecting the child's best interest. The court specifically held that the facts presented were "legally identical" to the facts of *McFarland v. Bass*, No. M2013-00768-COA-R3-CV, 2014 WL 3002004 (Tenn. Ct. App. June 30, 2014). The court reasoned that "Father has not shown that any of the purported changes argued by Father actually affected the child's best interest as required by the statute and the applicable case law," and the court declined to modify the parenting plan. Father appeals, arguing that the trial court erred in finding that Father failed to demonstrate a material change of circumstances affecting the child's best interest. Father also asserts the trial court erred in excluding certain testimony from Mother and in failing to adjust Father's child support obligation.

STANDARD OF REVIEW

Our review of the trial court's findings of fact in a non-jury case is de novo, with a presumption that the findings are correct unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). We review issues of law de novo, giving no presumption of correctness to the trial court's conclusions. *Armbrister*, 414 S.W.3d at 692; *Kendrick*, 90 S.W.3d at 569-70.

Trial courts have "broad discretion" to fashion parenting plans, as the Tennessee Supreme Court has explained:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting

4

schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

*Armbrister*, 414 S.W.3d at 693. Thus, the *Armbrister* Court concluded, an appellate court will not find that a trial court has abused its discretion unless the trial court's parenting arrangements "'fall[] outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.2d 82, 88 (Tenn. 2001)). In other words, "[d]iscretionary decisions must take the applicable law and the relevant facts into account." *Lee Med. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

ANALYSIS

*Modification of the Residential Schedule*

In considering whether to modify a residential parenting schedule, "the court must first determine if a material change in circumstances has occurred and then apply the 'best interest' factors of [Tenn. Code Ann. §] 36-6-106(a)." *Armbrister*, 414 S.W.3d at 697-98 (citing Tenn. Code Ann. § 36-6-405); *see* Tenn. Code Ann. § 36-6-101(a)(2)(C). If the court finds a material change in circumstance affecting the child's best interest has occurred, the court must next apply the fifteen factors of Tenn. Code Ann. § 36-6-404(b) in order to determine how, if at all, to modify the residential parenting schedule. *Armbrister*, 414 S.W.3d at 698.

With respect to a petition to modify a residential parenting schedule, Tenn. Code Ann. § 36-6-101(a)(2)(C) states that a material change of circumstances:

> may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

A material change in circumstances does not require a finding of substantial harm to the child. Tenn. Code Ann. § 36-6-101(a)(2)(C). Our Supreme Court has explained that Tenn. Code Ann. § 36-6-101(a)(2)(C) sets "'a very low threshold for establishing a material change of circumstances' when a party seeks to modify a residential parenting

5

schedule." *Armbrister*, 414 S.W.3d at 703 (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 257 (Tenn. Ct. App. 2007)) (further citations omitted).

Here, the trial court stated that Father "has failed to carry his burden of proof that there has been a material change in circumstance affecting the child's best interest." In support of its conclusion, the trial court determined that the facts of *McFarland v. Bass*, 2014 WL 3002004, were "legally identical" to the circumstances in the present controversy. Because the trial court's rationale hinged almost exclusively on *McFarland v. Bass*, we begin our analysis by examining that case.

When the parties in *McFarland* divorced, the father was designated the primary residential parent with 209 days of parenting time, and the mother exercised 156 days of parenting time. *McFarland*, 2014 WL 3002004, at *1. Less than two years following the entry of the final decree of divorce and parenting plan, the mother petitioned the court seeking to be designated the primary residential parent and to increase her parenting time. *Id.* The mother asserted that her relocation to Tennessee, a change in her employment, and the change in her daughters' ages constituted material changes in circumstances that warranted a change in the primary parent designation or the residential schedule. *Id.* at *3. The trial court considered each of the mother's arguments and held, with respect to her relocation, that her move "has had little to no effect on the current parenting schedule" and that it "has had no bearing on the best interest of the children." *Id.* Regarding her work schedule, the trial court stated that mother "currently works the same weekend/night schedule she previously worked at the hospital." *Id.* The trial court denied the mother's request for modification, and the mother appealed. *Id.* After reviewing the evidence, this Court determined that the evidence "does not preponderate against the factual finding that mother's relocation, change in work schedule, and the aging of the children did not create a material change of circumstance." *Id.*

We find *McFarland* distinguishable in several respects. First, the mother in *McFarland*, who was the non-primary residential parent, was granted approximately fifty more days of parenting time at the time of the parties' divorce than the Father in this case. Trial courts must "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child" consistent with the factors set forth in Tenn. Code Ann. § 36-6-106(a)(1)–(10). Tenn. Code Ann. § 36-6-106(a). The parties in *McFarland* were far closer to enjoying maximum participation in the child's life than are the parties in this case.[3] Second, the trial court in *McFarland* determined

---

[3] We also note that, in her brief, Mother relies on *Hawk v. Hawk*, No. E2013-02458-COA-R3-CV, 2014 WL 4198300 (Tenn. Ct. App. Aug. 26, 2014), to support her argument that the trial court correctly held there had not been a material change in circumstances in this case. In *Hawk*, this Court affirmed the trial court's decision denying a mother's request to be designated the primary residential parent. *Id.* at *9. *Hawk* is distinguishable due in part to the fact that the parents exercised equal parenting

that the evidence showed that the mother's work schedule had not truly changed. *McFarland,* 2014 WL 3002004, at *3. Here, Father's work schedule changed from an overnight shift to a more traditional work schedule (from 8:00 a.m. until 4:00 p.m.). At the time of divorce, Father's week night parenting time was tailored specifically to his work schedule, as it required the child to be returned to Mother by 6:00 a.m. on weekdays, the exact time his shift would begin. The parties have persisted in this arrangement, and Mother has continued to retrieve the child from Father's home at 6:00 a.m. even though Father's work schedule no longer requires the child to be picked up prior to the school day. For these reasons, the *McFarland* case is distinguishable from the present case.

After reviewing the evidence, we find this case meets the "very low threshold" for modification of a parenting plan outlined by our legislature in Tenn. Code Ann. § 36-6-101(a)(2)(C). Our Supreme Court has acknowledged the General Assembly's "'policy decision to make it easier to establish that a material change in circumstances has occurred' when a party seeks to modify a residential parenting schedule." *Armbrister*, 414 S.W.3d at 703 (quoting *Boyer*, 238 S.W.3d at 259). Here, Father has presented evidence on nearly every point Tenn. Code Ann. 36-6-101(a)(2)(C) identifies as a potential reason for changing a residential schedule. Father has had a significant change in his working condition that affects parenting. *See* Tenn. Code Ann. 36-6-101(a)(2)(C). Father testified that his work schedule at the time of divorce affected his time with the child because it was "tiresome" working the midnight shift and affected his ability to spend evenings with the child. Father testified that his new work schedule has given him more flexibility and allows him to have most evenings at home with his family.

In addition, both Father and Mother testified that the parties have failed to adhere strictly to the parenting plan. Father testified:

> Q. You all have - - it seems everybody's in agreement - - never really totally followed this parenting plan, have you?
> A. No, we have not.
> Q. More so now, I guess than - - than in the beginning even?
> A. Well, in the beginning it was something that - - that his mother and I had - - had agreed upon.
> Q. In other words, you all had agreed upon a schedule outside of what is on paper?
> A. Yes, sir.

Mother agreed that the parties "have deviated from the parenting plan several times."

time, with each parent receiving 182.5 days of parenting time per year. *Id.* at *1.

Father also asserts his remarriage and the subsequent birth of his daughter are factors that weigh in favor of finding a material change in circumstances. *See Armbrister*, 414 S.W.3d at 705 (noting that "remarriage is not, in every instance, a material change in circumstance," but it is a factor to be considered). The testimony shows that Father's remarriage has affected his parenting in a positive way. The child and his step-mother have a close relationship, the child's bond with his half-sister was described as "precious," and the child's step-mother is willing and able to assist Father with transporting the child to and from school if necessary when Father is on-call or at work. We find these circumstances constitute a material change in circumstances as contemplated by Tenn. Code Ann. § 36-6-101(a)(2)(C); therefore, we hold that the trial court erred in failing to find a material change in circumstances had occurred.

Our conclusion that there has been a material change in circumstance does not end the inquiry, however. The second step of the analysis requires a determination of the child's best interests, utilizing the factors set forth in Tenn. Code Ann. § 36-6-106(a). *See Armbrister*, 414 S.W.3d at 705. Because the trial court did not engage in an analysis of the child's best interests, we remand the case for the trial court to do so.[4] Because a decision regarding the child's best interest is necessarily factually driven and requires careful consideration of numerous factors, "trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Armbrister*, 414 S.W.3d at 693; *Leonardo v. Leonardo*, No. M2014-00372-COA-R3-CV, 2015 WL 3852802, at *4 (Tenn. Ct. App. June 18, 2015) (citations omitted).

Father's remaining arguments regarding the trial court's failure to allow certain testimony from Mother and his argument requesting a modification of his child support payment are pretermitted in light of the fact that the case must be remanded for a determination of whether a change in the residential schedule is warranted.

---

[4] Our Supreme Court noted in *Armbrister* that, "[o]nce a material change in circumstances affecting the child[]'s best interests has been established, a court finally must utilize the process prescribed by Tennessee Code Annotated section 36-6-404(b) to determine how the residential parenting schedule should be modified." *Armbrister*, 414 S.W.3d at 706.

CONCLUSION

For the foregoing reasons, the trial court's holding that there has not been a material change in circumstances is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are assessed against Wendi Natasha (Cook) Keeton, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE