IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2017 Session

## AMY AUSENBAUGH STURDIVANT v. WILLIAM EUGENE STURDIVANT

**Appeal from the Circuit Court for Montgomery County**
**No. 2015-CV-1166  Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2016-00976-COA-R3-CV**

_____

Father appeals the trial court's denial of his request for equal parenting time with the parties' children and failure to grant father a fault-based divorce based on mother's infidelity.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and BRANDON O. GIBSON, JJ., joined.

Mark R. Olson and Taylor R. Dahl, Clarksville, Tennessee, for the appellant, William Eugene Sturdivant.

Mark Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, Amy Ausenbaugh Sturdivant.

**MEMORANDUM OPINION[1]**

**Background**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This divorce action was filed on June 3, 2015, by Plaintiff/Appellee Amy Ausenbaugh Sturdivant ("Mother") on grounds of inappropriate marital conduct and irreconcilable differences. Defendant/Appellant William Eugene Sturdivant ("Father") answered, admitting that irreconcilable differences existed between the parties, but denying that he committed inappropriate marital conduct. Instead, Father alleged that Mother was guilty of inappropriate conduct. Father submitted a proposed parenting plan giving him equal time with the parties' three daughters, ages four, nine and fifteen. Mother's proposed parenting plan provided Mother with significantly more time with the children. The parties participated in mediation and successfully divided their marital property. A trial on the outstanding issues took place on March 8, 2016.

Mother generally testified that the cause of the parties' various separations and their ultimate divorce was Father's alcohol and marijuana abuse and his obsession with video games, which often caused him to isolate himself from the family. According to Mother, shortly before she vacated the marital home, Father was smoking marijuana daily in the parties' home with the children present.

Mother testified that she primarily provided for the family during the marriage, while Father earned his degree. Mother's job often required extensive travel. Although Father was therefore tasked with caring for the children while Mother worked, Mother testified that the parties decided to hire a nanny to help Father with childcare. The nanny only worked during the periods of time that Father was responsible for the children. With respect to Father's parenting, Mother was concerned that Father would isolate himself from the family to play video games. During this time, Mother testified that she was still the parent that scheduled and attended the majority of the appointments and meetings for the children. After Mother's job was eliminated, however, Mother testified that she primarily looked after the children, as her new job allows her to work from home. Mother admitted that her new job is commission only and that, as a result of not having received a paycheck yet, she has had to rely on public assistance and family support to pay her expenses.

Mother testified that her oldest daughter's relationship with Father is strained. As a result, Mother testified that she has allowed the child to decide whether she wants to visit with Father; however, the oldest child has exercised no significant visitation with Father since May 2015. Mother testified that she has encouraged her daughter to mend her relationship with Father, even putting the child in counseling.

Mother testified, however, that the parties' two younger children have an excellent relationship with Father. According to Mother, the parties had agreed to a temporary parenting schedule concerning the younger two children wherein Mother had primary responsibility for the children and Father was allowed two consecutive overnight visits per week and every other Friday evening. Mother testified that she believed this schedule

was in the children's best interests. Mother testified, however, that she was not opposed to allowing Father to have more consistent time with the children on weekends.

Father blamed the demise of the parties' marriage on Mother's extramarital affair. Indeed, Mother admitted that she began a physical relationship with another man in June 2015, after the parties' separation. Mother testified, however, that she only met her paramour during Father's regularly scheduled visitation and that her paramour was never around the children. At the time of trial, Father was living in the marital home and working in a factory as a quality engineer. Father testified, however, that he intended to return to teaching high school chemistry, which would allow him more time with the children. Father asserted that, compared to Mother, he is better able to financially provide for the children. Father noted that he was the primary caregiver of the children when Mother's prior job required her to travel. Father also asserted that he, rather than the nanny, would feed, bathe, and otherwise care for the children when he was home during this time; Father testified that once he came home from work, the nanny left the home. According to Father, the parties should be allowed equal time with the children; Father testified that he especially wants to repair his relationship with the eldest child, which would be accomplished by increased time with her. Although Mother did not appear to be discouraging the eldest child from interacting with Father and his family, Father asserted that Mother had likewise done nothing to discourage the child's decision to refuse to see Father.[2]

The trial court issued an oral ruling at the conclusion of trial. Therein, the trial court ruled that Mother would be named the primary residential parent and that Father would be awarded visitation consistent with the parties' temporary schedule. On the following day, however, the trial court sent a letter to the parties having reconsidered its ruling. Therein, the trial court ruled that Father would have every other weekend visitation, as well as one night per week. The trial court also ruled that the parties would have visitation in the summer on alternating weeks. Finally, the trial court's letter gave specific instructions for resuming visitation between Father and the parties' eldest child.

The trial court entered a final decree of divorce and permanent parenting plan on April 4, 2016. The trial court first declared the parties divorced pursuant to Tennessee Code Annotated section 36-4-129. The order contained detailed findings of fact with regard to the statutory best interest factors consistent with the trial court's oral ruling and ordered visitation consistent with the trial court's letter ruling. Father and the oldest child were also ordered to attend counseling and follow the recommendations of the counselor. Finally, the trial court set the parties' incomes for purposes of child support and ordered

---

[2] Both the oldest child and maternal grandmother testified as well. The parties' eldest child, who was fifteen at the time of trial, generally testified as to her preference not to spend time with Father. The child testified that her Mother did not force her to visit Father; rather, Mother has sometimes encouraged her to do so. Maternal grandmother's testimony generally mirrored Mother's.

the parties' property and debts to be divided and the marital home to be sold. Neither party was awarded attorney's fees. The permanent parenting plan attached to the trial court's ruling awarded Father visitation beginning with the 2016 school year to be exercised every Friday evening, every other weekend, alternating holidays, and alternating weeks in the summer.

## Issues Presented

Father raises two issues on appeal:

1. Whether the trial court erred in not awarding Father equal time with the children.
2. Whether the trial court erred in not granting Father a fault-based divorce based upon Mother's infidelity.

Mother also seeks an award of attorney's fees on appeal.

## Analysis

Father first argues that the trial court erred in not awarding Father equal time with the children. As our supreme court has explained:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, **Holloway v. Bradley**, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. **Massey-Holt v. Holt**, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge.'" **Suttles v. Suttles**, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting **Edwards v. Edwards**, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." **Eldridge v. Eldridge**, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. **Id.** "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." **Gonsewski v. Gonsewski**, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the

correct legal standards to the evidence found in the record." ***Eldridge***, 42 S.W.3d at 88.

***Armbrister v. Armbrister***, 414 S.W.3d 685, 693 (Tenn. 2013).

Here, the trial court considered both the proper party to be named the primary residential parent and the appropriate parenting schedule relative to the parties' divorce pursuant to Tennessee Code Annotated section 36-6-106(a). *See* Tenn. Code Ann. § 36-6-404(b) (directing courts to use the section 36-6-106(a) factors in fashioning residential schedules). Father does not argue that the trial court erred in naming Mother the children's primary residential parent, but that the trial court should have awarded Father more time with the children pursuant to section 36-6-106's mandate to fashion a schedule allowing "both parents to enjoy the maximum participation possible in the life of the child" and the other applicable factors.

> Tennessee's parental custody statute indeed contains the following language:
>
> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors.

Tenn. Code Ann. § 36-6-106(a). The above rule, however, does not mandate that each parent receive equal time with the child when such a schedule would not serve the child's best interest. *See, e.g.*, ***Rucker v. Harris***, No. M2013-01240-COA-R3-JV, 2014 WL 3530851, at *4, *6 (Tenn. Ct. App. July 15, 2014) (affirming the trial court's finding that equal time with each parent was not in the child's best interest even considering the above statutory language); ***In re Connor S.L.***, No. W2013-00668-COA-R3-JV, 2013 WL 5230258, at *11 (Tenn. Ct. App. Sept. 16, 2013) (same). Rather, as discussed above, a trial court's decision regarding the custody and parenting schedule of a child must be guided by various factors outlined in section 36-6-106(a), including but not limited to which parent served as the primary caregiver of the children, which parent is more likely to foster a relationship with the other parent, the stability and continuity offered by each parent, and the preferences of older children.[3]

---

[3] Section 36-6-106(a) provides:

The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting

Here, the trial court made detailed findings of fact regarding every factor above. Specifically, the trial court found that while many factors favored neither party, some factors favored Mother, including the parent's past and potential future performance of parenting responsibilities, *see* Tenn. Code Ann. § 36-6-106(a)(2), and the degree to which

responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

each parent has been the children's primary caregiver, *see* Tenn. Code Ann. § 36-6-106(a)(5). Father does not argue that the trial court erred with regard to any of its findings, but that the trial court's finding do not support the limited parenting time he was awarded.

After correctly outlining the law surrounding residential parenting schedule, Father's entire argument on this issue is as follows:

> In this case, the [trial court] discussed these factors specifically and made certain findings with regard to these factors. However, the findings made by the [trial court] do not support the conclusion of the [trial court] with regard to the residential schedule.
>
> The [trial court] found that five (5) of the factors were equal as between the Mother and Father, four (4) of the factors favored the Mother, and two (2) of the factors were equal with regard to the two younger children but favored the Mother with regard to the oldest child. The [trial court's] finding was unclear for two (2) of the factors. The [trial court] did not make any specific findings which would support limiting the Father's residential time to only 128 days per year and awarding 237 days per year to the Mother.

In the facts section of Father's brief, he also discusses the trial court's decision to increase his weekend visitation with the children, but nevertheless asserts that the allocation of days results in less time with the children than he was receiving under the temporary schedule.

Respectfully, we cannot agree that Father's argument is sufficient to show that the trial court abused its discretion in fashioning the residential schedule. Here, Mother testified that, after the parties' separation, the younger children had been visiting Father for two days during the week and every other Friday evening. Mother testified to her belief that this visitation schedule was appropriate because, while the children seeing Father for "a couple days in a row" worked well, more time with Father would be disruptive to the children, especially the younger child. Additionally, the trial court made various findings that Father isolated himself from the children even when he was their caregiver and that he abused alcohol and marijuana, sometimes in the presence of the children. In addition, Mother testified that she works from home, making her better able to parent the children during the week; in contrast, Father works outside of the home and would therefore be unavailable during much of the week. Under these circumstances, the trial court was well within its discretion to fashion a parenting plan awarding more parenting time to Mother and providing that Mother would primarily parent the children during the work week.

While we agree with Father that the specific days that he spends with the children has been altered from the parties' temporary schedule, the amount of time Father is actually able to spend with the children is largely unchanged or increased. Indeed, although Father takes issue with the fact that the schedule was changed from the temporary plan utilized by the parties during the separation, Father also asserts that the temporary schedule was patently unfair because his time with the children was largely consumed by school and work. Moreover, Father has been awarded equal visitation with the children during the summer, a significant increase from the daily schedule utilized by the parents during the pendency of the divorce. As such, it appears that the trial court modified its ruling to result in increased time actually spent with the children. In any event, we cannot conclude that Father has shown that the trial court's decision "'appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Gonsewski*, 350 S.W.3d at 105). Rather, we are not free to tweak the parenting schedule ordered by the trial court merely because Father asserts that fairness dictates that he receives more time.

### Grounds for Divorce

Father next asserts that the trial court erred in declaring the parties divorced pursuant to Tennessee Code Annotated section 36-4-129, rather than awarding Father a divorce based upon Mother's inappropriate marital conduct. The trial court's finding with regard to the ground for divorce is reviewed de novo with a presumption of correctness, unless the evidence preponderates otherwise. *See Sodemann v. Sodemann*, No. C.A. 92, 1987 WL 15199, at *1 (Tenn. Ct. App. Aug. 7, 1987) (citing Tenn. R. App. P. 13(d)) ("Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."). Section 36-4-129 provides, in pertinent part:

> The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Tenn. Code Ann. § 36-4-129(b). Here, Mother alleged the grounds of irreconcilable differences and inappropriate marital conduct in her complaint for divorce. Father admitted that irreconcilable differences existed in his answer, but asserted that it was Mother's inappropriate marital conduct that was also at fault for the divorce. *But c.f. Hyneman v. Hyneman*, 152 S.W.3d 549, 552 (Tenn. Ct. App. 2003) (holding that an admission in an answer to the ground of inappropriate marital conduct, without an evidentiary hearing, was insufficient to support a decree of divorce pursuant to section

36-4-129). Moreover, during the evidentiary hearing, both parties asserted that the other was ultimately at fault for the divorce. Father cites no law in support of his argument that, despite this evidence, the trial court erred in declaring the parties divorced pursuant to section 36-4-106, rather than awarding Father a fault-based divorce. Generally, the failure to cite appropriate legal authorities in support of an argument results in waiver on appeal. *See* ***Bean v. Bean***, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").[4]

From our review of the record, although Mother admitted to having an extramarital affair, Father was likewise not without fault for the breakdown of the parties' marriage. This Court has previously held that, where there is evidence of grounds against both parties, "simply declar[ing] that the parties were divorced" is "perhaps" the best option. ***Sodemann***, 1987 WL 15199, at *1. Additionally, Father has not asserted that he was in any way prejudiced by the trial court's decision to simply declare the parties divorced without the allocation of fault to Mother. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). As such, we discern no error in the trial court's decision.

### Attorney's Fees

Mother asserts that she should be awarded attorney's fees pursuant to Tennessee Code Annotated section 36-5-103(c). Section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

The above statute is an appropriate "basis for the court's authority to grant fees on appeal." ***Eberbach v. Eberbach***, No. M2014-01811-SC-R11-CV, --- S.W.3d ---, 2017 WL 2255582, at *6 (Tenn. May 23, 2017). Recently, the Tennessee Supreme Court reaffirmed the well-settled principle that when presented with attorney's fee requests

---

[4] This argument section of Father's brief also contains no references to the record.

under section 36-5-103, "the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate." *Id.* Although Father has not been successful in this appeal, we note that the trial court found that both parties had similar incomes. In addition, no attorney's fees were awarded in the trial court. Given the particular facts of this case, we exercise our discretion to decline an award of attorney's fees.

## Conclusion

The judgment of the Circuit Court of Montgomery County is affirmed and this cause is remanded to the trial court for all further proceedings as are necessary and may be consistent with this Opinion. Costs of this appeal are taxed to Appellant, William Eugene Sturdivant, and his surety.

_____
J. STEVEN STAFFORD, JUDGE