IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2018 Session

**BRIANNA DANIELLE KING V. AARON JEFFERSON DAILY**

**Appeal from the Circuit Court for Rutherford County**
No. 70778      William B. Acree, Senior Judge

———————————————

**No. M2017-01743-COA-R3-CV**

———————————————

This appeal arises from a divorce action involving two minor children. Mother filed a complaint for divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Father filed an answer and counter complaint based on Mother's inappropriate marital conduct and adultery. As to the minor children, Father wanted to have the children vaccinated, and Mother opposed vaccinations on religious grounds. The trial court awarded the divorce to Father based on Mother's inappropriate marital conduct and adultery. The court also designated Father as the primary residential parent and gave him sole decision-making authority for non-emergency medical decisions, which included vaccinations. On appeal, Mother contends that the court interfered with her right to exercise a religious exemption from vaccines. Mother also takes issue with the court's decision to award the divorce to Father based on Mother's adultery. She argues that because she had sexual relationships with other men after the parties separated, her acts do not constitute adultery. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Brianna Danielle King, LaVergne, Tennessee, Pro Se.

Erin Monet King and Adam Alexander Zanetis, Franklin, Tennessee, for the appellee, Aaron Jefferson Daily.

**OPINION**

Brianna Danielle King ("Mother") and Aaron Jefferson Daily ("Father") married on August 23, 2011, and had two children, a son born in 2011 and a daughter born in 2013. Father worked full time at Nissan while Mother stayed at home and cared for the

children. In early January 2016, police responded to a domestic dispute between Father and Mother and arrested Mother for aggravated assault.

Shortly following, on January 13, 2016, Mother filed for divorce in Rutherford County Circuit Court on the grounds of irreconcilable differences and inappropriate marital conduct, alleging Father was "emotionally and sexually abusive towards [Mother] during their marriage." On April 22, 2016, before Father filed his answer, the court entered a Temporary Agreed Order, which divided parenting time equally between the parties and allowed for joint decision-making. On May 3, 2016, Father filed an answer and counter complaint for divorce, alleging, as grounds, Mother's inappropriate marital conduct and adultery.

Relevant to this appeal, Father wanted the parties' minor children to be vaccinated and Mother refused, believing vaccinations would be harmful to the children. Thus, shortly after filing his counter complaint for divorce, Father filed several motions, one of which was a Motion for Immunizations of Children. The court appointed a Special Master to hear Father's motions, and the matter was set for June 2016. In the interim, the parties reached an agreement concerning immunizations, and the trial court entered an order on August 18, 2016, memorializing the agreement. The Agreed Order provided that Dr. Katherine Hoey would be the children's pediatrician and that the children would be immunized before the start of the school year.

Following entry of the Agreed Order, however, Mother changed her mind by renewing her objection to the children being vaccinated and filed a religious exemption with the public schools. Father filed a Motion for Civil Contempt and a Motion for Sole Decision Making for Minor Children and to Modify the April 22, 2016 Agreed Order Regarding Temporary Parenting Time and Support. Mother filed a Motion for Sole Decision-Making Authority and a Motion to Set Aside 8.18.16 Agreed Order in Regard to Mother's Consent for Immunizations. The trial court appointed a Special Master to hear the competing motions.

After conducting hearings on the competing motions, the Special Master recommended Mother be found in civil contempt for violating the August 2016 Agreed Order. He also recommended that Mother's Motion for Sole Decision-Making Authority and Motion to Set Aside 8.18.16 Agreed Order in Regard to Mother's Consent for Immunizations be denied and that Father be designated the primary residential parent with sole decision-making authority. Mother did not file an objection to the Special Master's Findings of Fact and Conclusions of Law, and on November 9, 2016, the trial court entered an order approving the Special Master's report. Shortly following, Mother allowed Dr. Hoey to vaccinate the children.

The court held a final divorce hearing on March 23 and 24, 2017. In the Final Decree of Divorce[1], the court awarded the divorce to Father on the grounds of inappropriate marital conduct, based on Mother's arrest in January 2016 for assaulting Father, and adultery, based on Mother's testimony that she had sexual relationships with other men during the marriage. The court stated, "With regard to Wife's adultery, Wife admitted to having multiple sexual relationships with other men after the parties' separation. Even though this sexual activity occurred after the parties split up, they were still married and not legally separated at the time…." The trial court did not find Mother's testimony that Father sexually assaulted her during the marriage to be credible.

In preparation of the permanent parenting plan, the trial court considered the best interest factors in Tenn. Code Ann. § 36-6-106(a) and determined that three factors favored Father, one favored Mother, and eleven favored neither. The court found that though Mother had been the children's primary caregiver for most of their lives, the court was most concerned with Mother's ability to provide appropriate medical care. Specifically, the court found that Mother was "obsessed with finding some sort of medical problem for the children," "caused an outburst" while the children were being vaccinated, accused the children's pediatrician of being a pedophile during a routine examination, and thought the children "should have the right to make their own informed medical decisions." Accordingly, the court designated Father as the primary residential parent with sole decision-making authority.

Mother appealed.

## ISSUES

Mother raises ten issues on appeal. Having assessed the issues as framed by Mother in the context of Mother's arguments, we find it appropriate to consolidate her issues into two issues to enable a more focused analysis: (1) Did the trial court err by awarding the divorce to Father on the basis of Mother's adultery[2]; and (2) Did the trial

---

[1] The Honorable M. Keith Siskin presided over the trial and issued a ruling through correspondence to the parties, ordering Father's counsel to prepare the final order. Father filed a Motion for Clarification of Final Ruling, for Additional Findings of Fact and Conclusions of Law. Judge Siskin died shortly thereafter, and Senior Judge William B. Acree heard Father's Motion and entered the Final Decree of Divorce on August 4, 2017. Father filed a Motion to Amend or Make Additional Findings of Fact, and to Alter or Amend the Judgment and/or, in the alternative, for Rule 60.01 and 60.02 Relief. Senior Judge Don Ash heard the motion and entered an order on November 28, 2017. During the initial appeal of this case, this court determined that the Final Decree of Divorce was not a final order because Father's claims for past due child support and contempt remained unresolved. On remand, Father agreed to dismiss those claims, and the trial court entered a Final Order on March 23, 2018.

[2] This issue consolidates the following issues as stated in Mother's brief:

(continued…)

court err by awarding Father sole decision-making authority for non-emergency medical decisions?[3]

For his part, Father asks this court to award him attorney's fees for a frivolous appeal.

## ANALYSIS

### I.    ADULTERY

The trial court awarded the divorce to Father based on two grounds, one of which was Mother's adultery. Mother contends her behavior did not constitute adultery because she and Father were separated when she had sexual encounters with other men.[4] This

---

1. Whether the Court issued the Final Decree for Divorce based off allegations with lack of hard evidence and thus failed to uphold burden of proof requirements per T.C.A. § 39-11-201.
2. Whether the Court failed to realize the interchangeability of the terms "separation" and "legal separation."
3. Whether the Plaintiff was under duress at time of trial.
4. Whether the Court has the right to declare or not declare when or where an individual is divorced or whether this right lays within an individual themselves, and at which point during divorce proceedings an individual is actually divorced from their former spouse.
5. Whether the Court had the right to ignore significant testimony by a witness in regards to sexual abuse by another, pursuant to T.C.A. § 39-13-502.

[3] This issue consolidates the following issues as stated in Mother's brief:

1. Whether the Court acted against Separation of Powers as laid out in the Constitution of the United States and which are reiterated in the Constitution of Tennessee.
2. Whether the Court acted against the Plaintiff's Religious Rights as laid out in the Constitution of Tennessee.
3. Whether the Court acted against the Plaintiff's legal right to exercise a Religious Exemption from vaccines for her children.
4. Whether the Court acted against principles pertaining to mitigating potential harm to the spouses and children as laid out in the Uniform Marriage and Divorce Act (Part I, 102(4)).

Mother also asks this court to consider "whether a serious and significant issue arose as a result of the Honorable Judge Keith Siskin's comment on the Agreed Order signed September 16, 2016." However, Mother did not raise this issue in the trial court. "[I]ssues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). Therefore, we will not consider it.

[4] In her complaint for divorce, Mother alleged as grounds for divorce, inappropriate marital conduct based on Father's sexual abuse of Mother. Mother argues the trial court erred by not considering her testimony that Father sexually assaulted her during the marriage. The trial court did not find Mother's testimony concerning the alleged sexual abuse to be credible, and the trial court's factual findings regarding Mother's allegations of sexual abuse are conclusive on appeal. *See Outdoor Management, LLC*

(continued…)

issue presents a question of law. Our standard of review of questions of law is de novo without a presumption of correctness afforded to the trial court's conclusions of law. *Blair v. Brownson*, 197 S.W.3d 681, 683 (Tenn. 2006); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

Adultery constitutes a ground for divorce in Tennessee, and the spouse asserting this ground has the burden of proving it by a preponderance of the evidence.[5] *Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988); Tenn. Code Ann. § 36-4-101(3).

It takes more than a mere separation of the parties to terminate the legal obligations voluntarily assumed in a marriage. *Clark v. Clark*, 644 S.W.2d 681, 683 (Tenn. Ct. App. 1982). Thus, in Tennessee, "acts occurring after the separation can constitute grounds for divorce." *Id*. at 682. More specifically, in the case of adultery, "[t]he fact that the parties' marriage was deteriorating and the parties were separated does not nullify [a spouse's] infidelity, which … substantially decrease[s] the probability of future reconciliation." *Jekot v. Jekot*, 232 S.W.3d 744, 754 (Tenn. Ct. App. 2007). Furthermore, as this court explained in *Perry v. Perry*, 765 S.W.2d 776, 779 (Tenn. Ct. App. 1988):

> [I]f post-separation adultery is not a ground for divorce, then any spouse is privileged to "move out" of the marital home and cohabit with another without creating a ground for divorce. Such an interpretation of the statute would largely emasculate its intent and effect.
>
> It is true that, in cases where a spouse seeks to excuse his or her own misconduct by misconduct of the complaining spouse, the relative times of the misconduct of the spouses may be material. Otherwise, as stated by the Supreme Court in *Thomasson*, the time of the misconduct in relation to the time of separation is immaterial.
>
> This court is neither authorized nor disposed to "split hairs" in an effort to distinguish or otherwise avoid the ruling of the Supreme Court in *Thomasson v. Thomasson*, which is the law of this State until the Supreme Court rules or the General Assembly legislates otherwise. In her pleading

---

*v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (When the appellant fails to provide this court with a transcript of the evidence or a statement of the evidence, "the presumption of correctness afforded to the trial court's findings of fact is essentially conclusive.")

[5] Mother erroneously argues that "no hard evidence was presented at trial proving beyond a reasonable doubt [that Mother] had committed adultery," citing to a general provision in Tennessee's criminal code — Tenn. Code Ann. § 39-11-201 — which section does not apply in an action for divorce.

and in her sworn testimony, the plaintiff has admitted adulterous conduct which would entitle defendant to a divorce. This is conclusive against her unless there is other credible evidence which would negative the effect of such admission. *John P. Saad & Sons Co. v. Nashville Thermal Transfer Corp.*, Tenn. App. 1982, 642 S.W.2d 151 and authorities cited therein. *Johnson v. Steele*, Tenn. App. 1976, 541 S.W.2d 795, and authority cited therein.

In her sworn testimony during the divorce proceedings, Mother admitted that she had sexual relationships with other men. It is undisputed that these acts occurred prior to the parties being divorced. Although Mother and Father were physically separated when these acts occurred, they were not legally separated pursuant to a court order. Accordingly, we affirm the trial court's decision to award the divorce to Father based on Mother's adultery as well as inappropriate marital conduct.[6]

## II. NON-EMERGENCY MEDICAL DECISIONS

Mother argues that the trial court erred by giving Father sole decision-making authority for non-emergency medical decisions in the permanent parenting plan, which includes the decision to vaccinate. Mother is opposed to vaccinations on religious grounds and argues the court interfered with her fundamental right to make decisions regarding the care and custody of her children.[7]

As this court has previously explained, "[t]he freedom of choice in matters of family life is … a fundamental liberty interest," and the vast majority of parenting decisions should be left to the parents of the child. *Neely v. Neely*, 737, S.W.2d 539, 543 (Tenn. Ct. App. 1987). However, in divorce cases, courts are called upon to intervene. *Id.* In such cases, the best interests of the children are paramount, which "may require some limitations on the rights and interests of either or both parents." *Id.* at 542-43.

---

[6] Mother also argues that Father did not prove she committed adultery because Father merely relied on Mother's testimony that she had extramarital affairs and Father did not present documentary or physical evidence in the form of photographs or "semen samples." We find this argument is without merit. *See Perry*, 765 S.W.2d at 779 ("In her pleading and in her sworn testimony, the plaintiff has admitted adulterous conduct which would entitle defendant to a divorce. This is conclusive against her unless there is other credible evidence which would negative the effect of such admission.").

[7] Mother also argues that the trial court erred by ordering her to vaccinate her children in compliance with the August 2016 Agreed Order. We decline to rule on that issue, because a decision by this court would have no practical effect. The children were already vaccinated in accordance with the Agreed Order, and the Agreed Order has been superseded by the permanent parenting plan in the final decree of divorce. *See Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *8 (Tenn. Ct. App. November 25, 2015). Accordingly, the issue is moot. *See id.*

A final decree in a divorce action involving minor children must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a). A permanent parenting plan is "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule." Tenn. Code Ann. § 36-6-402(3). Pertinent to this case, Tennessee Code Annotated § 36-6-404(3) requires the court to fashion a parenting plan that "minimize[s] the child's exposure to harmful parental conflict." Therefore, when parents vehemently disagree on issues involving a child's education, health care, extracurricular activities, or religious upbringing, a court may deem it necessary to allocate decision-making authority to one parent, which Tennessee Code Annotated § 36-6-404(5) permits. The court's decision must be guided by the relevant best interest factors found in Tennessee Code Annotated § 36-6-106(a)(1)-(15).

As explained in *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013), such decisions are within the discretion of the trial court:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey–Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge.'" *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)).

Neither parent disputes that they have strong disagreements about the children's medical care, particularly where vaccinations are concerned. To minimize conflict, the court decided to allocate decision-making authority for non-emergency medical care to Father. In making that determination, the court relied on a number of factors, not just Mother's opposition to vaccinations, in determining the best interests of the children. In pertinent part, the trial court found:

> There was a multitude of testimony about problems that [Mother] has had with regard to the children's medical care. [Mother] appears to be obsessed with finding some sort of medical problem for the children, in spite of the lack of medical evidence to support any such problems. For example, [Mother] insists that the children have some sort of gastrointestinal disorder, and when the children's pediatrician disagreed and declined to refer the children to a specialist, [Mother] threatened to sue the pediatrician.

[Mother] also caused an outburst at the pediatrician's office while the children were being vaccinated. [Mother] opposes vaccination on alleged religious grounds, but such cannot forgive her loud, inappropriate outburst at the doctor's office, which took place in the presence of the children, and after this Court specifically ordered that vaccinations would occur. Further, [Mother] has gone so far as to suggest in her trial testimony that [the] pediatrician is a pedophile, due to her retraction of [the son's] foreskin during a routine medical examination. Finally, [Mother] testified that she believes that a 3-year-old and a 5-year-old should have the right to make their own informed medical decisions.

The determination of where the best interests of the child lie is a factual question. *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). On appeal, we presume that the trial court's findings on this matter are correct unless the evidence preponderates against them. *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013); *see* Tenn. R. App. P. 13(d). In order for evidence to preponderate against a finding of the trial court, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). However, when there is no transcript or statement of the evidence, the presumption of correctness afforded to the trial court's findings of fact is essentially conclusive. *Outdoor Management*, 249 S.W.3d at 377.

In this case, there is no transcript or statement of the evidence. Therefore, we must presume there was sufficient evidence before the trial court to support its decision. *Id.* at 377-78 (citing *McKinney v. Educator and Executive Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)). Accordingly, we affirm the permanent parenting plan in all respects including the trial court's decision to grant sole decision-making authority for non-emergency medical decisions to Father.

III.    FRIVOLOUS APPEAL

Relying on Tenn. Code Ann. § 27-1-122, Father asks this court to award him the attorney's fees he incurred on appeal. The statute provides that when an appeal was frivolous or taken solely for delay, the appellate court may award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal. *Id*. We have determined this appeal was not frivolous and not taken solely for delay. Therefore, the request is respectfully denied.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Brianna Danielle King.

_____
FRANK G. CLEMENT JR., P.J., M.S.