IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 21, 2019 Session

## JASMINE DESIREE WIGHTMAN v. JOSHUA CHARLES WIGHTMAN

**Appeal from the Probate Court for Cumberland County**
**No. 2018-PF-6114   Larry Michael Warner, Judge**

_____

### No. E2018-01663-COA-R3-CV
_____

In this appeal, the father challenges the trial court's determination of the residential parenting schedule as it relates to visitation during the school term. Upon our review, we find that the trial court did not abuse its discretion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, Jr., J. and D. MICHAEL SWINEY, C.J., joined.

Jeffrey A. Vires, Crossville, Tennessee, for the appellant, Joshua Charles Wightman.

Henry D. Fincher, Cookeville, Tennessee, for the appellee, Jasmine Desiree Wightman.

## OPINION

## I. BACKGROUND

Jasmine Desiree (Wightman) Taylor ("Mother") and Joshua Charles Wightman ("Father") were married on January 16, 2011. Mother, 28 years old at the time of trial, was attending school to obtain training as a radiological technician. Father, 35 years old, worked as a corrections officer at the Bledsoe County Correctional Facility. Father stipulated that he earned $4,200 a month in his job. Despite attending classes, Mother was able to earn $1,440 a month. Two children were born of the marriage, Joshua (11/22/2010) and Brady (7/9/2014).

Mother filed a complaint for divorce on March 12, 2018. The parties agreed to the

provisions of an agreed temporary order entered on June 8, 2018, which provided in relevant part as follows:

a. During the summer, Father would have visitation with the Children during his days off from his job as a Corrections Officer;

b. During the school year, Father would have visitation every other weekend from Friday 5:00 pm until Sunday 5:00 pm and other times as the parties could agree;

c. Father's child support arrearages would be reserved to the final hearing.

On July 10, 2018, the parties filed a Joint Stipulation and Statement in Domestic Relations Case:

a. Summer visitation will be week on, week off divided equally between the parties;

b. Father has an admitted child support arrearage of $4,770, and will retire it with payments of $100 per month;

c. Father has the Children on their Spring Break; Mother has them on their Fall Break;

d. The parties have joint decision making over the Children's education, health, religious and extracurricular decisions.

During the proceedings, Father admitted that Mother was a good parent. He observed that she was the one who primarily bathed the Children, cooked for them, took them to doctors, and addressed school matters. Father claimed to be attentive to the Children's education, observing that "I just make sure they keep their grades up, they're at school on time, and they don't miss." However, he admitted: "I try to just have fun with them when I have them." He acknowledged that his work schedule was 6:00 a.m. to 2:00 p.m., five days a week, with holidays and weekends off. Despite Father contending that his boss was "real flexible," that he could come in late or work nights in order to get the Children to school on time, and that his father could help him with taking the Children to school and could "be there whenever he needs to be," he offered no proof to corroborate these claims.

Upon the court asking Father why he had not paid his child support, Father first blamed his lawyer. He then observed: "I've just been paying our household bills." The trial court accepted this explanation. On cross examination, however, Father admitted that the expenses he had paid were not for the residence where Mother and the Children

- 2 -

resided and, therefore, did not support the Children's needs. He acknowledged that Mother had paid for the Children's food and clothing over the six months' separation on one-third earnings of what Father earned. Father contended that he had bought clothes for the Children to use at his parents' house, where he was living. According to Father, he planned to get his own place once he could "budget that out."

Father informed the court that he would work with Mother and communicate with her regarding co-parenting issues. He claimed that visitation had gone smoothly. On cross examination, however, Father admitted that he had given Mother short notice of his schedule and threatened to throw her in jail if she did not deliver the Children the next morning to him. He acknowledged that the parties had engaged in a dispute just the weekend before the trial over visitation. Father noted on cross examination that he had agreed in the Agreed Order to permit the Children to stay with the Mother every week during the school year until he saw the child support calculations.

The trial court made both oral and written findings on the issue of school year visitation:

> Regarding the joint equal custody, that will be denied. The child[ren] need[ ] to know where home is. If we shift them back and forth every week—I've talked to kids, hundreds over the last 12 years [that I have been on the bench] in this situation, and they don't know where home is. And, especially at the age of these children.
>
> Standard visitation . . . . Split holidays, accordingly, and somebody's going to have to move Christmas, somebody's going to have to move Thanksgiving, that's just the way it works in these deals.
>
> If the parties cannot agree otherwise, he gets spring break, she gets fall. If they can't agree otherwise. Okay. And I encourage you to deviate from this. This is just as minimum. If he's got something special coming up, let him have them. I'm sure he's a good dad. I'm sure you're a good mother. I have no doubt about that, neither one of you.

The final decree added to these findings, approved the Joint Stipulation, and found in relevant part as follows:

> The Court affirmatively finds that the best interest of the minor children, after considering all relevant factors under T.C.A. § 36-6-101, and based upon the Husband's testimony,

that the Wife has been the primary caregiver of the minor children and should continue to be throughout the school year. Thus, during the school year, the Husband shall have visitation pursuant to the Court's Standing Visitation Order [which is every other weekend and as agreed]."

The Permanent Parenting Plan entered into by and between the parties is in all respects ratified and approved by this Court and is made a part of this Decree by reference as if fully set forth herein.

(numbering omitted). Father filed a timely notice of appeal.

## II. ISSUES

The issues raised in this appeal are restated as follows:

A. Did the trial court abuse its discretion in this residential scheduling matter.

B. Should Father pay Mother's attorneys' fees for this frivolous appeal.

## III. STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

A trial court's decision regarding parenting arrangements is reviewed under the deferential "abuse of discretion" standard. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). *See also Woolbright v. Woolbright*, No. M2016-02420-COA-R3-CV, 2018 WL 934815, at *4 (Tenn. Ct. App. 2018); *Hoover v. Hoover*, No. E2014-01629-COA-R3-CV, 2015 WL 4737413, at *4 (Tenn. Ct. App. 2015); *Roland v. Roland*, No. M2014-02032-COA-R3-CV, 2015 WL 5719833, at *6 (Tenn. Ct. App. 2015); *Aragon v. Aragon*, No. M2013-01962-COA-R3-CV, 2014 WL 1607350, at *4 (Tenn. Ct. App. Apr. 21, 2014).

When applying the "abuse of discretion" standard, the Tennessee Supreme Court

requires the court to apply a presumption that the decision is correct, and then view the decision in the light that most favors affirmance:

> [W]hen reviewing a trial court's exercise of discretion, the appellate court is to "presume that the trial court's decision is correct and review the evidence in a light most favorable to upholding the decision." *White v. Beeks*, 469 S.W.3d 517, 2015 WL 2375458, at *7 (Tenn. May 18, 2015)(*citing Lovlace v. Copley*, 418 S.W.3d 1, 16-17 (Tenn. 2013)(itself quoting *Gonsewski [v. Gonsewski]*, 350 S.W.3d [99,] 105 [(Tenn. 2011))].

*Roland*, 2015 WL 5719833 at *6.

Trial courts have "broad discretion" when making custody and visitation determinations. *Eldridge*, 42 S.W.3d at 85. Our Supreme Court has explained:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)(*quoting Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hope of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

*Armbrister*, 414 S.W.3d at 692-93. As long as the court applies the appropriate law and reaches a reasonable result on the facts presented at trial, the trial court's decision is to be

affirmed on appeal. As stated recently in *Woolbright v. Woolbright*,

> Thus, we will not find that a trial court abused its discretion in establishing a parenting plan unless the trial court's ruling "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.* (*quoting Eldridge*, 42 S.W.3d at 88).

2018 WL 934814, at *4.

## IV. DISCUSSION

### A.

When making a determination regarding a residential parenting schedule, the court must base its decision on the best interest of the Children. Tenn. Code Ann. § 36-6-106(a). Courts are required to consider each of the factors enumerated in Tennessee Code Annotated section 36-6-106(a), but they are not required to list each factor and explain how each factor impacts its ultimate determination. *Murray v. Murray*, No. M2009-01972-COA-R3-CV, M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010).

The factors listed in Tennessee Code Annotated section 36-6-106 provide as follows:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

- 6 -

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health

information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interaction with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106.

Upon considering the testimony presented, the trial court found that both parents loved the Children and were good parents. The proof, however, showed that Mother had performed the majority of parenting responsibilities relating to the daily needs of the Children, including bathing them, feeding them, taking them to school and helping with their homework. The court found that the Children had been with Mother since birth. The court further determined that Father's work schedule was not convenient for the Children's school schedule, as he works 6 a.m. to 2 p.m. out of the county. Despite

Father claiming that his boss was flexible, he offered no corroboration of this alleged fact. He did not explain with any precision how his family would help, and he did not have them testify that they would. Thus, the court found that Father's requested residential schedule was not in the Children's best interest. The court referenced several reasons for its ruling: the Children's need for a stable residence, their need to not be shuffled around, and the need for them to be settled and focused on school.

In their Agreed Order, the parties adopted the same schedule as the one ultimately ordered by the trial court. It expressly covered school year visitation. By so agreeing, Father indicated that he believed these provisions to be in the Children's best interest. He admitted that he only decided to fight for school-year 50/50 custody upon learning that he would have to pay more in child support.

The trial court heard and considered all the proof presented by the parties. Father has presented no proof that would justify a finding that the trial court abused its discretion in devising a residential parenting schedule. We conclude that the result the trial court reached is not outside the spectrum of rulings that reasonably results from applying the correct legal standards to the evidence.

**B.**

Tennessee Code Annotated section 27-1-122 reads in full as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. The question of whether to find an appeal frivolous and to award attorney's fees rests in the appellate court's sound discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). This discretion is to be exercised "sparingly so as not to discourage legitimate appeals." *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006).

Father's appeal in this matter is clearly frivolous. He has offered no reasonable basis for us to reverse the trial court's decision under the deferential "abuse of discretion" standard.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for the determination of Mother's attorney's fees pursuant to Tennessee Code Annotated section 27-1-122. Costs of the appeal are taxed to the appellant, Joshua Charles Wightman.


_____

JOHN W. MCCLARTY, JUDGE